## Bradley v. Commonwealth.

(Decided October 3, 1924.)

## Appeal from Allen Circuit Court.

1. Criminal Law—Court Abused Discretion in Denying Change of Venue for Local Prejudice.—In homicide case, court held to have abused discretion in denying change of venue on ground that public sentiment was so crystallized against defendant as to create universal bias and prejudice, under Ky. Stats., section 1109, and Constitution, section 11.

2. Criminal Law—Burden of Showing Prejudice is Upon Accused Seeking Change of Venue.—Burden is upon defendant seeking change of venue for local prejudice to at least make out prima facie case, and such burden is not discharged by mere filing of prescribed application under Ky. Stats., section 1109.

3. Criminal Law—Trial Court has Large Discretion in Granting or Refusing Change of Venue, but Action is Reviewable.—The trial court has large discretion in granting or refusing change of venue, but that discretion is not arbitrary and may be reviewed on appeal, under Constitution, section 11, and Ky. Stats., section 1109.

4. Criminal Law—Appellate Court May Determine Court Abused Discretion in Denying Change of Venue, though there was Opposing Evidence.—It is within province of Court of Appeals to determine that trial court abused its discretion in denying change of venue, though opposing evidence was heard.

5. Criminal Law—Error in Overruling Motion for Change of Venue Not Cured by Ordering Jury from Another County.—Error in overruling motion for change of venue for local prejudice was not cured by ordering jury from another county.

6. Criminal Law—Court Did Not Err in Not Defining "Stand-By" in Instruction as to Aiding and Abetting.—Court did not err in fail-

ing to define word "stand-by" used in instruction upon aiding and abetting another to kill.

7. Criminal Law—Instructions According to Directions or Approval in Opinion on Former Appeal Cannot be Complained of.—Instructions in accordance with directions in opinion on former appeal and instructions given on former trial, and not criticized by court on former appeal, cannot be complained of on second appeal.

8. Criminal Law—Contention that Verdict Flagrantly Against Evidence, Denied on First Appeal, Must be Denied on Second.—Contention that verdict is flagrantly against evidence must be denied on appeal, where it was denied on former appeal.

9. Homicide—Verdict for Murder Held Not Flagrantly Against Evidence.—Verdict of guilty of murder held not flagrantly against evidence.

10. Criminal Law—Benefit of Improper Argument Obtained Only by Objecting to it and Excepting to Court's Ruling.—To get benefit of alleged improper argument, accused must not only object to it at time, but also except to court's ruling adverse to him, and must include complained of argument, as well as his objections and exceptions, in his bill of exceptions.

THURMAN B. DIXON, RODES & HARDIN, N. F. HARPER, F. R. GOAD, and W. D. GILLIAM for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL and GARDNER K. BYERS, Assistant Attorneys General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, Sank Bradley, and Tom Hughes were jointly indicted in the Allen circuit court charged with the offense of wilfully murdering Will Willoughby. On his separate trial appellant was sentenced to the penitentiary for twenty-one years and the judgment pronounced on that verdict was reversed in an opinion in 201 Ky. 413, because of the failure of the court to properly instruct the jury. On his second trial he was again found guilty and imprisoned in the state penitentiary for his life, and he is here with this appeal seeking a reversal of the judgment pronounced on that verdict after his motion for a new trial was overruled.

Numerous grounds are relied on as reversible errors occurring at and during the second trial, but the only ones argued here which we think deserve consideration are: (1), the refusal of the court to grant a change of venue upon a motion made by appellant for that purpose pursuant to notice, as is provided for by section 1109 of our present statutes; (2), error in the instructions given to the jury; (3), that the verdict is flagrantly against the

evidence, and (4), improper and prejudicial argument of counsel for the Commonwealth, each of which we will dispose of as briefly as possible in the order named.

1. The substance of the ground relied on in support of the motion for a change of venue was that public sentiment throughout Allen county was so crystallized against defendant as to create a universal bias and prejudice against him so that it would be impossible for him to have a fair and impartial trial in that county. The petition was supported by about one hundred affidavits of various citizens of the county of almost every profession and avocation in life, and they each state that they were acquainted with the feeling throughout the county against defendant, and that according to their opinion as gathered from conversations and talk with the people generally it would be impossible for him to obtain a fair trial in that county. There were no counter affidavits filed by the Commonwealth, but it introduced on the hearing of the motion some. eighteen or twenty witnesses who, it is claimed, contradicted plaintiff's affidavit and those of all of his witnesses, and that the witnesses for the Commonwealth stated, in substance, that defendant could obtain a fair trial in the county. But the majority of those witnesses on cross-examination testified, in substance, that they did not propose to speak as to the opinion and sentiment of others than themselves, and that so far as they personally were concerned it was their belief that defendant could obtain a fair trial in the county, notwithstanding some, and perhaps a majority of them, testified that there was great indignation at the time of the commission of the homicide and reports of a mob were circulating throughout the county, and the county judge, when defendant was arrested, sent him to Bowling Green for safekeeping and where he was lodged in jail. They also testified that while that sentiment may have subsided to some extent, yet the same rumors had been in circulation since that time. It is shown by uncontradicted affidavits that throughout the second trial, from the judgment in which this appeal is prosecuted, not only the court room, but the streets around the court house and its halls and approaches were crowded with people, and that on the outside of the court room there was considerable noise and confusion to such an extent that the judge, at one stage of the trial, was compelled to go to the front door of the court room and address the crowd so as to quiet its clamor. And it is also shown that

throughout the trial approving demonstrations were made in the court room over every occurrence that the members of the audience construed as detrimental to the defendant.

By reference to the former opinion it will be seen that the killing occurred at a spring in the town of Scottsville, but it is not shown whether it is a public or privately owned one; but whether the one or the other the people generally had access to it for procuring drinking water for themselves and their stock and there was provided there a concrete trough through which stock might be watered, and we take it from the record that such use of the spring had been of long standing. Appellant and his co-defendant lived in Scottsville, and Willoughby was a farmer living in the country some eight or ten miles therefrom. According to the first account of the killing, and as it appeared on the surface, the two defendants in the indictment had undertaken to prevent the deceased, a countryman, from using the water flowing from the spring, and this seemed to have become a widely spread impression and created an almost universal prejudice against defendant because he, a town man, was endeavoring to prevent the deceased, a countryman, from exercising his right to the water of the spring, and that sentiment became so strong that rumors of a mob were frequently heard. It was freely admitted by all of the witnesses for the Commonwealth on the trial of the motion for a change of venue that a jury could not be obtained in Allen county, and some of the witnesses testified that the sentiment first engendered against defendant was about the same at the second trial as it was originally. One of the Commonwealth's witnesses in answering the questions propounded to him said: ''I couldn't say; I take it he could get as fair a trial as any other man could under the circumstances;'' and another one said that there was danger of a mob if defendant should be acquitted, and, on being asked, ''What did you hear about the mob?'' answered, ''Just talked about if they didn't give him a fair trial a mob might get him.'' It is, therefore, apparent from what we have stated, supplemented by what we have not stated, though appearing in the record, that a great number of the witnesses introduced by the Commonwealth in opposition to the motion by no means met the issue or contradicted the large number of affidavits filed by defendant in support of his motion. So that, the showing made on the trial of the motion was in substance

this, that defendant and about one hundred citizens of the county of the character and standing hereinbefore indicated, swore positively that he could not obtain a fair trial in the county; that the feeling was so strong against him as to produce indiscriminate talk of a mob, so much so that the county judge, in order to provide a place of safety for defendant, sent him to Bowling Green; that the same feeling still prevailed in the county to such an extent that there would yet be a mob formed unless defendant received what the members of the mob called a fair trial and which necessarily meant conviction.

The section of the Constitution, *supra,* and the section of the statutes enacted pursuant thereto were each bottomed upon the policy of the law that not only the defendant in a criminal prosecution, but the Commonwealth as well, should receive a fair trial at the hands of an unbiased and unprejudiced jury; and that if such a trial could not be obtained in the venue of the commission of the offense it should be removed to a place where it could be so obtained, all of which was pursuant to the underlying determination that justice should prevail in a court of justice, and that neither life, blood nor liberty shall be taken from the citizen except through a fair and impartial trial, nor should the Commonwealth be deprived of its right of just punishment except through such a trial.

The practice upon such motions, as well as this court's authority to review the judgment of the trial court in overruling them, has been before this court in a great number of cases, and it has been firmly settled that the burden is upon the defendant to at least make out a *prima facie* case entitling him to the relief, and that such burden is not discharged by the mere filing of the prescribed application. Wilkerson v. Commonwealth, 88 Ky. 20, and Dilger v. Commonwealth, *idem* 550. Furthermore, it is the well established rule that the trial court has a large discretion in granting or refusing a change of venue, but that discretion is not an arbitrary one and may be reviewed on appeal to this court, and if it is convinced from the evidence heard upon the motion, coupled with the circumstances appearing in the case, that the trial court's discretion was abused, it will be corrected on review by this court. Crockett v. Commonwealth, 100 Ky. 382; Hargis v. Commonwealth, 135 Ky. 578; Fish v. Benton, 138 Ky. 644; Smith v. Commonwealth, 148 Ky. 60; Truax v. Commonwealth, 149 Ky. 699; Saylor v. Commonwealth, 158 Ky. 768; Mansfield v.

Commonwealth, 163 Ky. 488; Allen v. Commonwealth, 168 Ky. 325, and Bryant v. Commonwealth, 202 Ky. 427. The Commonwealth relies on the last six cited cases to support the ruling of the court in denying the change of venue, in all of which except the Allen case such ruling was sustained on appeal, but in none of them was there anything like such a showing of prejudice and bias as is found in this case, and in the Allen case, where the refusal of the court to grant the motion was reversed, the facts were not so strong or at least no stronger in support of the motion than those found in this case.

In the Smith case but a small number of affidavits were filed by the applying defendant and they were met on the part of the Commonwealth by the affidavits of two bankers, five justices of the peace of the county, the road supervisor and his assistant, a member of the city council of the city of Maysville, a liveryman, an ex-jailer and "several farmers." Besides, it was expressly found from the facts heard that no prejudice sufficient to authorize a change of venue was shown to exist. On the trial of the motion in the Truax case, defendant filed the affidavits of but two persons with his motion, and the Commonwealth introduced fourteen witnesses, followed by the same number introduced by defendant, and the motion was overruled, but a jury was obtained from another county and the court, in sustaining the rule of the trial judge said: "The evidence on the motion was such that we could not say that the lower court abused its discretion in either granting or refusing the change of venue." In the Saylor case, the motion was supported by the affidavits of only two witnesses and their statements were denied by a written response filed by the Commonwealth's attorney and which response was supported "by the affidavits of certain citizens of the county filed at the same time," and the court held that under that showing, together with the circumstances developed in the record, the court did not abuse its discretion in overruling the motion. In the Mansfield case the motion was supported by the affidavits of two persons and the defendant introduced seven others on the trial of his motion, and that testimony was contradicted by the Commonwealth by that of "representative citizens from different parts of the county of Barren, and they united in expressing the opinion that the defendant could have a fair trial in that county." So that, in that case there was no great divergency in the number of witnesses testifying for or against

the motion, and that introduced by the Commonwealth was of an *absolute* and *positive* nature that defendant *could* obtain a fair trial in the county, which as we have seen was untrue in this case with reference to at least some of the Commonwealth's witnesses. In the Bryant case only five witnesses testified supporting the grounds of the motion, while fourteen witnesses for the Commonwealth testified "that in their judgment a fair and impartial trial could be held in Breathitt county," and we held that, under the rule, *supra,* measuring our authority to review the ruling of the court on the hearing of the motion, we were not authorized to say that he abused a sound discretion in not sustaining the motion and granting the change of venue.

Neither do the opinions in the cases of Stamp v. Commonwealth, 200 Ky. 133, and Graham v. Commonwealth, *idem* 161, contain any pronouncement militating against appellant's contention on this appeal that the trial court abused a sound discretion in overruling his motion, since in the Stamp case only two affidavits were filed by the appellant in support of his grounds with an equal number of opposing affidavits filed by the Commonwealth, and the court held that at most "the evidence was about equal." And in the Graham case, the motion was supported by the affidavits of six persons without giving their occupations and was opposed by those of five persons whose given occupations showed them to be of good standing in the community, and the opinion said: "Upon the facts thus presented we strongly incline to the opinion that the more intelligent view of the question at issue was that manifested by the witnesses testifying against the necessity for a change of venue."

But clearly it was contemplated by both the framers of the Constitution in adopting section 11 thereof, and by the legislature in enacting section 1109 of the statutes, that prosecutions would arise and occur in counties where the prejudice against the defendant or the crime he committed was so great as to authorize a change of venue in order that justice might be done; or that the feeling against the deceased, or because of defendant's prominence or influence, or other facts, that the Commonwealth could not have a fair trial in the county, and a change of venue, at the instance of the Commonwealth or the defendant, was provided for; and the discretion of the court in ruling upon the motion is subject to review by this court within the limitations hereinbefore set out. It is

seldom, if ever, the case that the evidence introduced in support of the motion by whichever side made is uncontradicted, since it is almost universally true that testimony opposing the motion is heard in some form. If, therefore, it is within our province to determine that the court's discretion was abused in cases where opposing evidence was heard, it seems to us that the proof and other facts and circumstances in this case furnish as strong grounds of an abuse of discretion as could be presented, unless we had a case where there was *no* testimony in opposition to the motion, but to which class of cases alone we are not confined in reviewing the ruling of the trial court.

We, therefore, conclude that, as hereinbefore intimated, the cases relied on by the Commonwealth fall far short of furnishing such convincing proof of the nonexistence of the necessary bias and prejudice to authorize a change of venue as is shown in this case; not only because of the great disparity in the number of witnesses introduced by each side upon the hearing, but likewise because of other facts and circumstances appearing in this case as to the actual existence of such bias and prejudice. Nor do we think that the error in overruling the motion was cured by ordering a jury from another county, since it is a well known fact of human nature that when a community forms a settled determination as to the proper result of a trial and the crowded attendance upon the trial is composed of citizens of that community, their sentiment as expressed upon every favorable opportunity will be absorbed by a stranger as readily as a sponge will absorb moisture. Under such circumstances a jury, though composed of citizens of another county, cannot help being influenced and themselves become unconsciously prejudiced and biased by the pervading atmosphere around them, and it is our opinion that a trial under such circumstances is not such a one as it is the cherished policy of the law to furnish both to the Commonwealth and to the defendant. We, therefore, conclude that the court should have sustained the motion for a change of venue and ordered the trial heard in some convenient county where such prejudice did not exist.

2. Under this ground it is argued that the court, in its instructions upon the defendant aiding and abetting Hughes to kill the deceased, should have defined the word "standby" and otherwise submitted what constituted "aiding and abetting," but we are not inclined to agree

with that criticism, since the trial court followed in that respect the direction contained in the opinion on the first appeal of this prosecution. The same might be said concerning the other criticism of the instructions with reference to the one on self-defense. That instruction was No. 6 given by the court, and it is insisted that, according to its draft, it was left for the jury to determine the existence or nonexistence of the danger to defendant or Tom Hughes before he could exercise his right of self-defense or the defense of Hughes. The instruction taken as a whole is not, as we think, capable of that interpretation though it might be so construed. It is almost verbatim in the same language as the self-defense instruction given upon the first trial and of which no criticism was made in the opinion we rendered on the appeal from that trial, and for that reason alone we would not be authorized to reverse the judgment upon this ground. However, since there must be another trial, the court, upon that hearing, will give to the jury instruction No. 6, but will add after the word "danger" in the third line from the bottom thereof these words: "Either actual or to the defendant reasonably apparent."

3. This ground must be overruled if for no other reason than because it was presented and denied on the first appeal of this case. But, independently of that fact, the proof introduced at the trial does not authorize it. It is true that defendant and a considerable number of eyewitnesses support the theory that he did not strike the deceased the fatal blow, that it was done by Tom Hughes after defendant had withdrawn from the affray and fight in which he and Willoughby were engaged and had retired severely wounded and sat down on a concrete curb stone, when Hughes, who had separated defendant and Willoughby, became engaged in another fight with deceased and struck the fatal blow. The son of the deceased and another witness testified that the defendant struck deceased on the head with a rock before he retired from the difficulty, and the jury no doubt believed that testimony in preference to that given by defendant and all of his witnesses, and also believed the further fact that the blow so struck by defendant produced the death of deceased. While the testimony on the whole largely preponderated as to the actual occurrences in favor of defendant's theory, yet we cannot say that a contrary verdict based upon the testimony of young Willoughby

and that of the other eye-witness was so flagrantly against the evidence as to authorize a reversal therefor.

4.    Under this ground numerous affidavits, including one by the defendant, were filed showing for the first time the alleged improper argument of counsel for the Commonwealth; but we have consistently held in a long line of cases and with none to the contrary that in order for appellant to get the benefit of alleged improper argument he must not only object to it at the time but also except to the court's ruling if adverse to him, and must include the complained of argument, as well as his objections and exceptions thereto, in his bill of exceptions.  So that the accuracy of the matters constituting his complaint may be certified to this court in the proper manner.  If the argument made by counsel was such as is included in the affidavits it was highly improper and the court should have at once sustained an objection thereto and admonished the attorney in no uncertain terms to desist therefrom; but, no objection having been taken to it and it not being certified to this court in the approved manner, we can not consider it on this appeal.

For the reason, however, that the court erred in overruling the motion for a change of venue the judgment is reversed with directions to sustain the motion for a new trial, set aside the verdict and for proceedings consistent with this opinion.  Whole court sitting except Judge Settle, who was ill and unable to be present.