## Williams v. Commonwealth.

Sept. 26, 1941.

J. H. Asher for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At the regular 1939 election for the office of judge of the Thirty-Third Circuit Court Judicial District in this Commonwealth the then incumbent, S. M. Ward, and K. N. Salyer were candidates therefor. The canvassing board certified that Judge Ward had received a majority of the votes cast in the counties composing the district and issued to him a certificate, but Salyer contested the certification so made in an action filed by him against Ward in the Leslie circuit court—it being one of the counties of the district and in which Judge Ward resided. One of the grounds of contest was the violation by Judge Ward of our Corrupt Practice Act, Kentucky Statutes, Section 1565b-1 et seq., whereby he spent money for the purchase of votes for himself in the election, and we held in the case of Ward v. Salyer, 283 Ky. 294, 140 S. W. (2d) 1016, that the testimony heard at the trial of the contest established that ground, and as a consequence there was no valid election held for that office and it was declared vacant.

Appellant and defendant below, Elvin Williams, testified in that case that on a certain occasion and at a certain place Ward gave him $10 with at least the implied intention and purpose to buy seven votes in the family of appellant, and instructed him at the time to employ the money partly in procuring other votes for

Ward. A son of appellant was present on the occasion and corroborated the testimony of his father. Almost immediately after appellant had so testified Ward procured the county judge to issue a warrant for the arrest of appellant, charging him with false swearing, and under which he was bound over to the grand jury. The special judge, who was then trying the contest, issued an order forbidding any such arrests during the progress of the contest trial and no more were made throughout that period; but Ward, after the contest trial was over, went before the grand jury then in session in Letcher county and requested that body to indict about fifteen witnesses who had testified to similar transactions, and that request was complied with, resulting in the return of indictments against the persons named by Ward in which each of them was accused of false swearing in the contest trial, among whom was appellant.

Before the prosecution was set for trial, which was due to be had at the current term, defendant gave notice of his intention to move for a change of venue, which was later heard, and a great number of witnesses pro and con testified on the motion, filling two volumes of evidence which constitute a part of this record. However, the special judge appointed to try the prosecution overruled that motion and a day was set for the trial of the indictment. On that day appellant moved to quash the indictment because the grand jury that returned it was improperly drawn from the wheel by Judge Ward, in that he read out the names drawn from the wheel to the clerk of the court who recorded them on a sheet of paper and that he thereby divulged the names of those who composed the next grand jury that returned the indictment. That motion was also overruled and the trial proceeded with an eventual verdict of the jury finding appellant guilty and punishing him with confinement in the penitentiary for one year. His motion for a new trial was overruled, and from that order and the judgment of the court pronounced on the verdict he prosecutes this appeal, relying on a number of grounds for a reversal, among which are, (1) error of the court in overruling his motion for a change of venue; (2) like error in overruling his motion to quash the indictment, and (3) error of the court in overruling his motion for a peremptory instruction of acquittal on the ground that his guilt was not shown by the testimony of two witnesses, or of one witness and strong corrobo-

rated circumstances which must be done in a prosecution for perjury or false swearing. These grounds will be considered and determined in the order named.

1. The question presented by ground (1) has been before this and other courts many times, and none of them has ever defined with precision any definite or settled course to be pursued by the court trying it. On the contrary, the most that has been determined is contained in a general statement that a trial court is vested with a sound discretion in determining the question upon the evidence and circumstances of each case, and that unless such discretion has been abused to the probable detriment of the accused the appellate court will not disturb the order of the trial court in disposing of the motion. But it will be perceived that such indefinite statement of the law—which we hereby approve as correct—erects no permanent or fixed standard to guide the court in passing upon such questions, but relegates their determination, and the course to be pursued, to the facts and circumstances of each case and to the sound judgment of the court as to whether or not such facts and circumstances reveal a situation of bias, prejudice or other adverse circumstances whereby there is considerable probability of the accused being unable to obtain a fair and impartial trial within the venue of the pending indictment. With the law in that condition it is an easy task to find cases decided by both this and other courts wherein the ruling of the trial court was upheld, and others wherein it was set aside, dependent upon the appellate court's conclusion as to whether or not in the particular facts disclosed, a due regard for the constitutional requirement of a fair and impartial trial has been violated. Such variety of opinions may be found in the cases cited to Section 1109 of our present Statutes, among which are those of Allen v. Commonwealth, 168 Ky. 325, 182 S. W. 176, and Estes v. Commonwealth, 229 Ky. 617, 17 S. W. (2d) 757.

In the Allen case the prominence of the victim constituted the main ground for the motion for a change of venue; whilst here the prominence of the prosecuting witness (Judge Ward) furnishes that ground, plus the activities and earnest efforts of the sheriff of Leslie county and at least some if not all of his deputies, and also that of the circuit court clerk or the county court clerk, or both, and other friends of the prosecuting wit-

ness who, as will be seen, was the incumbent presiding judge of the court in which the trial was to be had and had been such for more than one full term. He and those of his friends that we have mentioned were most active in their efforts to bring about a conviction of those who had testified against him in the contest proceedings. So much so that the brief filed for the commonwealth on this appeal says: "It is very apparent through the whole transcript that Judge Ward was determined to convict those who testified against him in the election contest suit." As we have seen, he drew the condemnation of the judge trying that contest by procuring the arrest of the first witness who testified against him on an issue of violating the Corrupt Practice Act, and which was such a blatant effort at intimidation as to call for a mandatory order of the judge presiding at the contest proceedings that such steps should thereafter be prohibited until after that trial was finished. Judge Ward's testimony before the grand jury was transcribed by the stenographer provided for it and has been made a part of the record. It breathes a command to that body and exhibits a determination fully supporting the excerpt supra from the brief of the Commonwealth. Other facts and circumstances appearing upon the trial of the indictment wherein Judge Ward was most conspicuous as a vigorous prosecutor strengthens the conclusion therein.

So far as the record discloses, the appellant was and is an humble citizen with a limited acquaintance as well as a limited number of friends, if, indeed, he possessed any. If what he testified to was the truth, then it demonstrates that he was likewise a citizen of low morale, yet the constitutional provision guaranteeing to him a fair trial as a citizen of the commonwealth (Section 11 of that instrument) prescribes for a change of venue in criminal prosecutions when it sufficiently appears that the rights of the accused would be imperiled by pervading influence within the venue of the indictment and the commission of the offense. That provision in the Constitution was referred to and commented on by us in the Allen case supra, wherein we reversed the judgment of conviction because the trial court improperly overruled the motion for a change of venue on account of the influence of the friends of the murdered deceased, and for which the appellant therein was tried.

A similar situation existed in the Estes case, supra. In that case the sheriff of Estill county was killed by the appellant, who was indicted therefor charged with murder. We held that the motion for a change of venue made in that case should have been sustained and reversed the trial court on that issue, although the contamination there involved was the popularity of the deceased sheriff and the influence of his relatives and acquaintances amongst the eligible jurymen of the county of Estill where the homicide was committed. We referred in that opinion to the prior case of Bradley v. Commonwealth, 204 Ky. 635, 265 S. W. 291, and in referring to it in the Estes opinion [229 Ky. 617, 17 S. W. (2d) 759], we stated what was first said, supra, in this opinion that: "It is sufficient to say that it was therein [Bradley case] clearly shown that each case is to be determined largely from its individual facts and circumstances with a view of effectuating the purpose for which the right [change of venue] exists." We also referred in the Estes opinion to the prior case of Browder v. Commonwealth, 136 Ky. 45, 123 S. W. 328, wherein we found that "the statements of the witnesses introduced upon the hearing of the motion, literally considered, preponderated against its granting, but which this court determined were overcome by the proven and undisputed circumstances in the case, and which were held to speak louder and more convincingly than the mere opinion statements of witnesses, who themselves might be influenced the one way or the other because of the prevailing sentiment either for or against the defendant."

The commonwealth on the hearing of the motion in this case introduced some citizens, consisting mainly of county officialdom, and who appear to be in sympathy with Judge Ward, who said that they were of the opinion that a fair and impartial jury could be obtained in Leslie county to try appellant on the charge of false swearing in the contest election case. Others testified, in substance, that while Judge Ward, on account of his official position, might have some influence upon those eligible for jury service in the county, nevertheless they thought that a jury could be obtained, the members of which would not be led astray from performing their duty under the facts proven, and the law as given by the court. But such testimony does not meet the situation, since it would be a sad commentary indeed if twelve

persons eligible for jury service could not be obtained within the entire confines of the county who would not allow the desire of their circuit judge to influence them in arriving at their verdict.

It is universally known, and is a fact, that a circuit judge is most highly regarded by his constituents who elected him as well as by others, and they rightfully look upon him as being the enforcer of the law for their protection, and to a large extent they believe he is the embodiment of truth on factual issues where he appears as a witness. From such considerations and others that could be mentioned, much more frequently than otherwise, county officialdom align themselves in such circumstances with the circuit court judge for various considerations that could be mentioned, and which, altogether, creates a condition difficult to overcome before a jury surrounded by such circumstances—of all of which this and other courts are made aware by long and unvaried experience and observation. We conclude that this is one of the cases wherein the motion of appellant for a change of venue should have been sustained and the case transferred for trial to a county not within the judicial district of Judge Ward, and to thereby remove any adverse influences that he on account of his position may have possessed by holding the trial outside of such atmosphere.

But it may be insisted that since the jury that tried the case was obtained from another county the prevailing local prejudice and bias we have discussed was rendered ineffective and the error of the court in overruling the motion thereby became non-prejudicial. The same facts, however, existed in the Estes and Bradley cases supra, and likewise in the case of Shipp v. Commonwealth, 124 Ky. 643, 99 S. W. 945, 30 Ky. Law Rep. 904, 10 L. R. A., N. S., 335. All of those cases discuss the alleviating effect of summoning a jury from another county when the local situation is such as to authorize a change of venue. In the Bradley case [204 Ky. 635, 265 S. W. 294], we disposed of the question of the effect of obtaining a foreign jury in this language: "Nor do we think that the error in overruling the motion was cured by ordering a jury from another county, since it is a well-known fact of human nature that when a community forms a settled determination as to the proper result of a trial and the crowded attendance upon the

trial is composed of citizens of that community, their sentiment as expressed upon every favorable opportunity will be absorbed by a stranger as readily as a sponge will absorb moisture. Under such circumstances, a jury, though composed of citizens of another county, cannot help being influenced and themselves become unconsciously prejudiced and biased by the pervading atmosphere around them, and it is our opinion that a trial under such circumstances is not such a one as it is the cherished policy of the law to furnish both to the commonwealth and to the defendant.'' The other cited cases are to the same effect, although cases may be found where under their peculiar facts the obtention of a foreign jury was held to be sufficient to overcome the local bias and to render the error in overruling the motion nonprejudicial to the movant's rights. However, we are thoroughly convinced that the circumstances described herein were of sufficient potency to influence and possibly poison the minds of even a foreign jury, and that our ruling in the cases referred to should be followed in this one.

2. The facts relied on in support of the motion to quash the indictment are substantially the same as those found in Kitchen v. Commonwealth, 275 Ky. 564, 127 S. W. (2d) 121, in which we sustained the motion because the members of the grand jury returning the indictment were drawn in the same way pursued in this case. But it is now insisted that in writing that opinion, based upon the provisions contained in Section 2243 of our present Statutes, we overlooked the language therein found saying: ''The names of all persons drawn as grand and petit jurors shall be publicly announced, when drawn.'' Hence, we are asked to overrule the Kitchen opinion insofar as it sustained the motion to quash the indictment therein, because the ruling therein was in direct conflict with the excerpt supra, taken therefrom. But an examination of the statute will clearly show that the excerpt is made applicable only to courts of continuous session, the judges of which are required to draw both grand and petit jurors two weeks before they are required to serve, and to immediately give the names to the sheriff for them to be summoned for service beginning at the time from which their names were drawn from the wheel by the presiding judge of such continuous court, and that the excerpt has no application to a court not of continuous session

such as is the Leslie circuit court. There is a reason for the distinction in the respect indicated as between courts of continuous session and those of statutory fixed terms at designated dates in the statute. There might be, and in many instances are, many months intervening between the date of the drawing of the jury in such fixed terms in courts not of continuous session; whilst there is only at most two weeks between the date of drawing the jury in courts of continuous session and the time of their service. In other words, the intervening period between the time of drawing jurors in continuous courts and the time of their service corresponds to about the time when it is the duty of the circuit court clerk to give the names of the drawn jurors to the sheriff to be summoned in non-continuous courts. The periods whereby publication may be made of those who are to compose the jury are thereby made about equal, and there would be no point in requiring secrecy in the names drawn by the judge in courts of continuous session so as to avoid corrupting influences to be exercised on the prospective jury before the convening of court. At any rate, the legislature has so provided and made provision applicable to the two respective situations. We, therefore, conclude that our holding and interpretation in the Kitchen case was and is correct and that it should be followed in courts not of continuous session. It, therefore, follows that the motion to quash the indictment should also have been sustained.

3. It is universally the rule—long since crystalized into permanency and invariably followed by this and other courts—that before one may be convicted of perjury or false swearing the accusation should be established by at least two witnesses, or one witness and strong corroborating circumstances. That rule is admitted, though its soundness is attacked in brief of the commonwealth, but the attack falls far short of convincing us of the error of the rule. On the contrary, we still regard it, as the courts have heretofore done, as a wholesome one and should continue to be followed. In this case no one contradicted the testimony of the appellant Williams and his twenty-three year old son in their testimony that Judge Ward gave to the father ten dollars for the purpose indicated above, except Judge Ward himself. The only corroborating circumstance that could possibly be gleaned from any of the evidence introduced is an effort to impeach the appellant for

morality which one or two witnesses did. But on cross examination they were asked in what particular respect was the reputation of appellant bad for morality, to which they answered that it was for unlawfully dealing in liquor, and sometimes engaging in gambling. They cited no other impeaching conduct of appellant than those two traits. No effort was made to attack the reputation of appellant for truth and veracity even if that would have been sufficient corroboration, and witnesses testified to the bad moral reputation of Judge Ward in the way and manner he conducted his court, and partiality shown by him, &c. The issue here involved was and is the truthfulness of the testimony given by appellant in the contest proceedings. The conduct attributed to him by the witnesses who attacked his reputation but remotely, if at all, bore upon his reputation for telling the truth, especially where no individual interest of his was at stake, and we are not inclined to hold that such testimony alone was sufficiently corroborative of Judge Ward's testimony to fulfill the requirements of the rule supra. Therefore, the court erred in overruling appellant's motion to direct his acquittal, but which should be done on another trial if there should be one and if the testimony is substantially the same as that given at the instant trial.

Wherefore, the judgment is reversed, with directions to set it aside and sustain the motion for a new trial, and for proceedings not inconsistent with this opinion.

The whole Court sitting.