**Edgar Eugene HARNESS, Jr., Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 22, 1971.

As Modified on Denial of Rehearing Feb. 18, 1972.

Creech & Hogg, Ashland, for appellant.

John B. Breckinridge, Atty. Gen., James H. Barr, Asst. Atty. Gen., Frankfort, for appellee.

VANCE, Commissioner.

The appellant, Edgar Eugene Harness, Jr., was convicted of the offense of unlaw-

ful possession of dangerous drugs and his punishment was fixed by a jury at confinement in the penitentiary for a period of five years and a fine in the amount of $5,000.00. KRS 217.731 and KRS 217.995. He claims the judgment of conviction should be reversed because (1) the fruits of an illegal search were admitted in evidence against him, (2) the court erred in denying his petition for change of venue, (3) the court erred by failing to grant appellant's motion for a continuance and (4) there was improper conduct of the Commonwealth's Attorney.

On February 27, 1970, police officers conducted a search of a mobile home in which the appellant resided. Twenty-five (25) tablets of LSD and a quantity of marijuana, both dangerous drugs as defined in KRS 217.725, were found in a bathroom which adjoined the bedroom occupied by appellant. The appellant was charged in separate indictments with unlawful possession of both LSD and marijuana but the indictment for unlawful possession of marijuana was dismissed on a plea of entrapment.

An affidavit made by a state police officer, Herbert Bowling, to secure a search warrant contained the following allegations:

"Affiant further states that the information upon which he relies is as follows: That on 25th February 1970, at the hour of 12:25 A.M., local time, he drove to said above described housetrailer with Dave Roberts and Jerry Jones, after the said Dave Roberts informed affiant he could purchase LSD tablets or pills there, from a person identified as 'Sonny' Harness. Dave Roberts alighted from affiants automobile, knocked on the housetrailer door and 'Sonny' Harness came to the door, talked with Dave Roberts and admitted him to the trailer. In approximately two (2) minutes Dave Roberts and 'Sonny' Harness reappeared at the door, Dave Roberts came back to the car and delivered two (2) pills or tablets of LSD to this

affiant and told affiant he had purchased these pills from 'Sonny' for Five ($5.00) Dollars, which affiant had previously given Roberts.

"Further affiant states on the 27th February 1970, at 9:45 P.M., local time, he went to the above described trailer and purchased approximately ten (10) grams of hashish or marijuana from Edgar Eugene Harness for which affiant paid the said Harness the sum of $32.50, U.S. currency.

"Affiant further states that dangerous drugs and narcotics are unlawfully possessed by the said Edgar Eugene Harness as he believes.

"Affiant further states that the person described as 'Sonny' Harness and Edgar Eugene Harness are the one and same person.

"s/s Herbert    Bowling
Herbert    Bowling"

The appellant attacks the search warrant upon the ground that it was issued without probable cause. His contention in this regard is that officer Bowling relied upon the information supplied by Dave Roberts, an informant, with respect to the purchase of two (2) LSD tablets; that nowhere in the affidavit does the officer assert that the said Dave Roberts was a reliable person and worthy of belief, or any facts to indicate the reliability of Mr. Roberts, or even an assertion that the officer believed Mr. Roberts to be reliable. Appellant relies upon Spinelli v. United States, 393 U. S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The cases cited deal with the requirements of an affidavit for a search warrant when information has been furnished by an unnamed informant. In this case the name of the alleged informant was divulged in the affidavit. We do not consider it necessary to determine whether Spinelli, Ventresca and Aguilar are applicable to named informants

because we believe that the affidavit for the search warrant is sufficient without reference to the alleged purchase of the two (2) LSD tablets by Dave Roberts.

The affidavit in express language alleged that officer Bowling on the 27th day of February 1970, purchased ten grams of marijuana from appellant at his house trailer. Appellant concedes that this allegation was ample to support the issuance of the warrant but argues that the order of the trial court dismissing the indictments relating to the marijuana had the effect of removing that portion of the affidavit of officer Bowling relating to the marijuana. Appellant cites no authority for this proposition and we know of no reason why it should be so.

The affidavit was regular in form and the statements contained therein sufficiently showed probable cause. It is not proper to go behind the allegations of the affidavit in determining whether the allegations furnish sufficient evidence of probable cause. Commonwealth v. Thacker, 229 Ky. 488, 17 S.W.2d 399 (1929).

The twenty-five (25) tablets of LSD found in the search were properly admitted in evidence at the trial.

The appellant next contends that because of undue pretrial publicity public opinion was biased against the defendant and he could not obtain a fair trial in Rowan County, Kentucky. His motion for change of venue was overruled.

Appellant filed as exhibits in his behalf copies of newspapers which carried accounts of appellant's arrest, the fact that the case had been submitted to a grand jury and brief reports on the returning of the indictments. There was no apparent attempt to fan the flames of public resentment against the defendant, no repetitious keeping the matter before the public day after day and in no sense do we consider the pretrial publicity "a trial by a newspaper."

Other activities, such as the fact that two meetings were held at schools on the general subject of drug abuse, fall far short of establishing that the public mind was poisoned against appellant.

Appellant's petition for change of venue was accompanied by the affidavits and testimony of seven witnesses.

The Commonwealth countered with the testimony of the county sheriff, the deputy county court clerk and the mayor of the city of Morehead. Each of the Commonwealth's witnesses was shown to have a wide acquaintance in the county and each expressed the opinion that appellant could receive a fair trial in Rowan County. The substance of the testimony of each of the witnesses was that there was no public sentiment, public prejudice or public interest in the case; that they had not heard anybody at all discussing the case since shortly after the indictment was returned and that nobody had expressed to them an opinion as to the guilt or innocence of the appellant.

Appellant takes the position that this evidence merely shows the witnesses were not acquainted with the state of public opinion. We do not so regard it. When witnesses who are actively engaged in dealing with a broad cross-section of the general public testify that they have not heard any public discussion about a particular criminal prosecution, one inference which can be drawn therefrom is that such prosecution does not occupy any prominent spot in the minds and thoughts of the people. If the whole community were outraged, prejudiced or crying out for the scalp of a defendant, it would be reasonable to expect witnesses of the type offered by the Commonwealth to have heard some inkling of it.

Although the witnesses for appellant claimed to have overheard specific instances of expressions of appellant's guilt, for the most part they could not, or would not, identify any person who had so expressed

himself and these witnesses did not pretend to have any general familiarity with the state of public opinion over the entire county. All of the witnesses for appellant were personal acquaintances, five of whom he had met during his student days at the university. The other two were attorneys. One of the attorneys is a member of the firm which represented the appellant and filed a brief for him with this court. The other had resided less than one year in Rowan County. In view of the evidence offered by the Commonwealth, the matter of change of venue addressed itself to the sound discretion of the trial court and we are not authorized to interfere with the exercise of that discretion unless it was clearly abused. Hurley v. Commonwealth, Ky., 451 S.W.2d 838 (1970); Williams v. Commonwealth, 287 Ky. 570, 154 S.W.2d 563, 136 A.L.R. 1398 (1941). In Carnes v. Commonwealth, 306 Ky. 55, 206 S.W.2d 44 (1947) we said:

> " * * * The trial court is vested with a sound discretion in determining the question where there is evidence both in support and in resistance of the motion, and this court has uniformly held that it will not interfere with the trial court's decision unless it appears with reasonable certainty that there has been an abuse of discretion. * * *."

The above-quoted language was cited with approval in Nickell v. Commonwealth, Ky., 371 S.W.2d 849 (1963) and we think it is particularly applicable to this case.

Finally it should be noted that no record of the voir dire examination is before us. We do not know if any juror who tried this case had ever heard of it before the trial. In the absence of a showing that some one or more of the jurors were at least exposed to the alleged public prejudice and sentiment against the appellant, we cannot hold that appellant was prejudiced.

■ The appellant next contends that the trial court erred in refusing his motion for a continuance. He asked for the continuance because of the unavailability of the witnesses Jerry Jones and Dave Roberts at the trial and filed an affidavit as to what he expected each witness would testify. The testimony for the Commonwealth conceded every material fact that appellant expected to prove by the absent witnesses except for appellant's claim that the witness Dave Roberts would testify that he did not on any occasion procure any drugs from appellant and that he did not tell officer Bowling that he had ever purchased any drugs from appellant. That evidence would be material only insofar as it related to the attack upon the affidavit for the search warrant in which officer Bowling stated that Dave Roberts gave him two (2) LSD tablets which we stated were purchased from appellant. Since the validity of the affidavit was sustained upon the basis of other allegations in the affidavit, the testimony of the absent witnesses was immaterial.

■ Appellant alleges that a state chemist was erroneously permitted to testify as to the hallucinogenic properties of LSD and that the Commonwealth's Attorney made an improper argument in three instances as follows:

(1) "LSD is not just a common pill. It's not like 25 pills of St. Joseph aspirin that you and I would have in our medicine cabinet."

(2) " * * * by dangerous, it is dangerous to human life: Witness the death of Art Linkletter's daughter."

(3) "In cases like this for the possession of dangerous drugs, such as LSD, in my opinion the punishment is not commensurate with the offense."

We think it was proper to show that LSD has hallucinogenic properties and appellant cites to us no authority that a state chemist was not qualified to so testify.

We do not think that the argument of the Commonwealth's Attorney requires a reversal of the conviction. A Commonwealth's Attorney may legitimately argue

that a crime is a serious one and should carry a heavy penalty. The only aspect of the argument requiring comment is the reference to the death of Art Linkletter's daughter. The argument is the assertion of a fact not shown by the record and yet it was an event of very widespread general knowledge.

Appellant relies upon the cases of Carnes v. Commonwealth, Ky., 406 S.W.2d 849 (1966) and Harrison v. Commonwealth, Ky., 368 S.W.2d 171 (1963). Those cases are distinguishable upon the facts but in each of them we did condemn a concluding argument in which the Commonwealth's Attorney stated facts not in evidence. In *Carnes* the Commonwealth's Attorney argued:

"'I have been your Commonwealth's Attorney four years and I truthfully say, ladies and gentlemen, that ninety per cent of our crime is a direct result of alcoholic beverage, * * *.'"

In *Harrison* the argument was:

"'* * * Most of the murder cases that are tried are caused by liquor. * * *.'"

In *Carnes* and *Harrison*, the Commonwealth's Attorney undertook to testify in his concluding argument that a certain percentage of crime (or most of it) resulted from the use of intoxicating liquors. This was not a fact of record, nor could it reasonably be said to be a matter of which jurors would have common knowledge or of which they could take notice without proof.

A Commonwealth's Attorney may not so inflame the jurors with heinous details or consequences of a crime that they,

solely out of passion and prejudice, will be led to return a verdict of guilty. On the other hand he is allowed reasonable latitude in argument to persuade the jurors the matter should not be dealt with lightly.

In this regard it is difficult to draw a fixed line between the permissible and impermissible and to some extent each case must be reviewed in the light of the particular facts pertaining to that case.

We regard the reference to the death of Art Linkletter's daughter in the argument as the equivalent of having argued that LSD is a dangerous substance which can cause death. There was proof in the record of hallucinogenic properties of LSD. We feel that it would have been proper argument to state to the jury that LSD was a dangerous substance; that persons having taken it are subject to hallucinations and that while in such a condition they might easily injure or kill themselves or others.

The fact that Art Linkletter's daughter had jumped to her death (supposedly under the influence of drugs) was well-known. If the mention of her death in connection with the dangers attributable to LSD exceeded the bounds of propriety, it did not stray far beyond the pale. The reference to her death may have dramatized the dangerous propensities of LSD and we think better practice would have avoided such an argument. Nevertheless, we do not believe that when all of the facts of this case are considered, it can be said that there is any likelihood that the reference to the death of Art Linkletter's daughter so inflamed the jury as to influence their verdict.

The judgment is affirmed.

All concur.