**Glen F. DEAN, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 90–SC–691–MR.

Supreme Court of Kentucky.

Dec. 17, 1992.

Rehearing Denied Feb. 18, 1993.

Julie Namkin, Asst. Public Advocate, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Ann Louise Cheuvront, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

SPAIN, Justice.

The appellant, Glen F. Dean, Jr., was convicted by a jury in the Christian Circuit Court of two counts of first-degree rape, three counts of first-degree sodomy, one count of complicity to first-degree rape, and two counts of complicity to first-degree sodomy. He appeals as a matter of right his sentence to imprisonment for ninety years.

The evidence at trial established that on December 17, 1989, the sixteen-year-old victim was abducted by Dean and his co-defendant, Steven Allen Wallace, from a shopping mall parking lot in Hopkinsville. Wallace forced the young lady at knifepoint into his car, which Dean was driving. For the next three and one-half hours, the victim was transported to two different rural locations where she was raped and orally and anally sodomized repeatedly by both men.

At their joint trial, the co-defendant, Wallace, testified on his own behalf, but the appellant, Dean, declined to take the stand. Wallace recanted his prior statement given to the police and admitted that the victim's testimony was largely accurate, except that he denied raping her. The prosecution introduced into evidence the appellant's taped confession, which the trial court had declined to suppress at a pretrial hearing.

Whether its admission violated Dean's state and federal constitutional rights is the principal issue in this appeal.

Five additional assignments of error are raised by the appellant, which we will hereafter discuss briefly. Four of these issues were common to the appeal by the co-defendant, Wallace, whose sentence to imprisonment for eighty years was affirmed by this Court in a non-published opinion rendered on September 24, 1992.

The additional issues question whether the trial court erred in denying both defendants a change of venue, whether the prosecutor committed reversible error by making allegedly "inflammatory" remarks to the jury, whether each defendant's complicity convictions were supported by sufficient evidence, whether the trial court improperly excluded defense evidence in the penalty phase, and whether the jury pool was improperly constituted. We affirm on all issues.

## I. SHOULD DEAN'S CONFESSION HAVE BEEN SUPPRESSED?

The appellant argues that the trial court erred by denying his motion to suppress the taped statement which he gave to law enforcement officers, insisting that a comment made by him was tantamount to a request for counsel, thus requiring interrogation to cease.

At 10:05 a.m. on December 30, 1989, the appellant was arrested. He was fully advised of his *Miranda* rights and at 10:35 a.m., in the presence of the Hopkinsville Chief of Police, a city detective, and an FBI agent, he signed a waiver of rights form after it was read to him. He also acknowledged that he understood the waiver, following which he gave an oral statement. Afterward, Dean requested to see his mother and was told that he would be allowed to see her later. At 11:30 a.m., a tape-recorded interview and statement were commenced. The following colloquy took place:

Q: Do you understand all your rights? You have to say yes or no.

A: Yes sir.

Q: Is there any part you don't understand?

A: Should, should I, should I have somebody here? I don't know.

Q: Well, that's up to you, but you told us, you know, you're telling us your story. Now that's up to you. You know this is being recorded?

A: Yes sir.

Q: And it's being given under your own free will and accord, we've not promised or threatened you or anything like that?

A: Yes sir.

At the hearing held on his motion to suppress, defense counsel asked Dean what he meant by the above-quoted question, to which appellant testified that he "wanted to talk to somebody that would give [him] advice on what to do.... A lawyer, [his] mother, anybody, somebody to tell [him], cause nobody was telling [him] what [he] should do." His attorney argued that because appellant's question could be construed as an indirect request for counsel, the police officers should have ceased their interrogation and determined whether Dean was in fact revoking his prior waiver of the right to have counsel present.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court extended the Fifth Amendment right to remain silent to include the right to counsel during interrogation. The Court also gave the following guidance to interrogators when a suspect requests counsel:

> If, however, [a suspect] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.

*Id.,* 86 S.Ct. at 1612.

Again, the U.S. Supreme Court in the case of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), reiterated the requirement that officers cease interrogation if an accused clearly asserts his right to have counsel present during custodial interrogation. Furthermore, the Court emphasized "... that it is inconsistent with *Miranda* and its progeny for the

authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." 451 U.S. at 482, 101 S.Ct. at 1883.

At the pretrial suppression hearing before the trial court, defense counsel relied on the case of *State v. Tidwell,* 775 S.W.2d 379 (Tenn.Ct.App.1989), for its holding that an utterance of this nature triggers a duty on the part of the interrogators to clarify whether an accused intends by that remark to assert his constitutional right to counsel. In denying the motion to suppress, however, the trial judge agreed with the Commonwealth that *Tidwell* was distinguishable on its facts since there the equivocal remark of the accused actually made reference to the word "lawyer." Dean, on the other hand, never *once* spoke of a "lawyer," "attorney," or "counsel" during his interrogation.

In *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the U.S. Supreme Court dealt with a situation wherein an accused clearly requested the assistance of counsel during preliminary questioning. Instead of terminating the interrogation at that point, however, the police detectives continued to press the suspect again to answer their questions. Finally he admitted knowing in advance about the planned robbery and, after considerable probing by the detectives, confessed to having committed it.

In holding that the trial court's refusal to suppress the confession violated Smith's constitutional rights, the Court observed that these custodial interrogation cases require two distinct inquiries. "First, courts must determine whether the accused actually invoked his right to counsel.... Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Id.,* 469 U.S. at 95, 105 S.Ct. at 492, 493.

After stating that the Smith case concerned the threshold inquiry of whether

Smith invoked his right to counsel in the first instance, the Court observed:

On occasion, an accused's asserted request for counsel may be ambiguous or equivocal. As the majority and dissenting opinions below noted, courts have developed conflicting standards for determining the consequences of such ambiguities.

*Id.,* 469 U.S. at 95, 105 S.Ct. at 493.

Some courts have held that all questioning must cease upon any request for or reference to counsel, however equivocal or ambiguous (citing a California and a Texas case). Others have attempted to define a threshold standard of clarity for such requests, and have held that requests falling below this threshold do not trigger the right to counsel. (Citing an Illinois case holding: "[A]n assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity," but not "every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel.") Still others have adopted a third approach, holding that when an accused makes an equivocal statement that "arguably" can be construed as a request for counsel, all interrogation must immediately cease except for narrow questions designed to "clarify" the earlier statement and the accused's desires respecting counsel (citing a 5th Circuit and an Idaho case).

*Id.,* 469 U.S. at 96 n. 3, 105 S.Ct. at 493 n. 3.

Our task, then, under *Edwards v. Arizona, supra,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85, is to decide herein whether Dean clearly "invoked his right to have counsel present" or "expressed his desire to deal with the police only through counsel."

After examining the various approaches for resolving such ambiguous or equivocal remarks as appear in this case, we are drawn to the standard recently enunciated by our sister state, the Commonwealth of Virginia, from which our own Commonwealth was born. In *Eaton v. Com.,* 240 Va. 236, 397 S.E.2d 385 (Va.1990), the Su-

preme Court of Virginia concluded that "the standard prevailing in Virginia is that a request for counsel must be 'unambiguous and unequivocal' in order to trigger the *Edwards* rule." In our opinion, this standard most closely and correctly interprets the direction in *Edwards* that custodial interrogation must cease when an accused who has received *Miranda* warnings and has begun responding to questions "has *clearly* asserted his right to counsel." *Edwards,* 451 U.S. at 485, 101 S.Ct. at 1885 (emphasis added). Since Dean's words and conduct fell short of that standard, we hold that he failed to invoke his right to counsel and that the *Edwards* rule did not apply. Accordingly, the trial court did not err in denying the appellant's motion to suppress his statements.

## II. WAS IT ERROR NOT TO CHANGE VENUE?

■ Appellant Dean and Wallace both claimed that their state and federal constitutional rights to a fair and impartial jury were violated by the trial court's denial of their motion for a change of venue. Dean contends that prejudice pervaded the local trial proceedings for two reasons: (1) the "sensational stories by the media covering the Christian County area," and (2) the alleged "prominence and power of the complaining witness' family which is widely known throughout Christian County."

In response to the particular facts of this case, the trial court took the precaution of allowing individual examination of the jury pool. In addition, the judge granted appellant's pretrial motion for additional peremptory challenges due to "high publicity" and the "inflammatory" nature of the case. While virtually all of the panel of prospective jurors had some knowledge of the case through the media, "the mere fact that jurors may have heard, talked, or read about a case is not sufficient to sustain a motion for a change of venue, absent a showing that there is a reasonable likelihood that the accounts or descriptions of the investigation and judicial proceedings have prejudiced the defendant." *Brewster v. Commonwealth,* Ky., 568 S.W.2d 232

(1978), citing *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

"Examination of jurors on their voir dire is considered the best test as to whether local prejudices exist." *Whitler v. Commonwealth,* Ky., 810 S.W.2d 505, 507 (1991). Because of the deference due to the special nature of the trial judge's local insight, *Nickell v. Commonwealth,* Ky., 371 S.W.2d 849 (1963), and because of the exceedingly powerful evidence against appellant, *Williams v. Commonwealth,* Ky., 154 S.W.2d 563, 564 (1941), we cannot say that the ruling amounted to an abuse of discretion.

### III. WAS THERE PROSECUTORIAL MISCONDUCT REQUIRING REVERSAL?

■ Appellant's third contention is that the prosecutor's "inflammatory" arguments violated his right to a fundamentally fair trial as guaranteed by the due process provisions of our state and federal constitutions. His complaint centers around the "overall tenor" of the prosecutor's arguments which he claims were calculated to ignite the collective sense of outrage of the jurors as citizens of Hopkinsville where "[we] pride ourselves as being law abiding people." Specifically he charges that it was improper for the prosecutor to recount how the police, the grand jury, the judge, and the Commonwealth's Attorney's office had all "done their jobs," and that it was now the jury's turn. He also cites as prejudicial the prosecutor's reference to the defendants as "crazed animals."

Our consideration on appeal of alleged prosecutorial misconduct "must focus on the overall fairness of the trial." *Slaughter v. Commonwealth,* Ky., 744 S.W.2d 407, 412 (1987). "A prosecutor may call on the jury to do its duty." *McPeak v. Commonwealth,* Ky., 213 S.W.2d 447 (1948). It has been held permissible to refer to a defendant as a "beast," *Koonce v. Commonwealth,* Ky., 452 S.W.2d 822 (1970), and as a "desperado," *Holbrook v. Commonwealth,* Ky., 61 S.W.2d 644 (1933), and a "lowlife," *Cook v. Bordenkircher,* 602 F.2d 117 (6th Cir.1979). The evidence against appellant in this case is overwhelming. In another case, "crazed animals" might be viewed by this Court as questionable, but "outrageous conduct warrants stronger words than might otherwise be justified." *Timmons v. Commonwealth,* Ky., 555 S.W.2d 234, 241 (1977). Recognizing, as we do, the broad latitude which must be allowed counsel in presenting a case to the jury, *Stasel v. Commonwealth,* Ky., 278 S.W.2d 727, 729 (1955), we cannot agree that the conduct complained about transcends legitimate argument.

### IV. WERE THE COMPLICITY CONVICTIONS SUPPORTED BY SUFFICIENT EVIDENCE?

■ The appellant argues that the failure of the trial court to direct a verdict of acquittal in relation to the complicity counts violated his state and federal constitutional rights to due process. He alleges that there was insufficient evidence to find that he intended to participate in the promotion, facilitation, or commission of the acts of rape and sodomy for which his codefendant was convicted.

The sufficiency issue is not preserved for review. In the trial court, appellant objected to "all instructions, under Section 13 of the Kentucky Constitution concerning double jeopardy," never mentioning insufficiency of the evidence on the element of intent. This objection fails to preserve the error alleged on appeal with regard to the complicity counts because appellant cannot "assign one reason for objecting to an instruction in the trial court and a different one on [this] appeal." *Scudamore v. Horton,* Ky., 426 S.W.2d 142, 146 (1968). This Court has specifically stated that "CR 51 condemns such a practice." *Young v. DeBord,* Ky., 351 S.W.2d 502 (1961).

Even if the error alleged had been properly preserved, it fails on the merits. Appellant contends that the Commonwealth failed to prove beyond a reasonable doubt the intent required to convict him of aiding his codefendant in his acts of raping and sodomizing the victim. *Dowdle v. Commonwealth,* Ky.App., 554 S.W.2d 92 (1977).

Further, appellant asserts that because the element of forcible compulsion contained in the instructions on the complicity counts is essentially identical to the element of forcible compulsion specified in the instructions to the jury on the counts of first-degree rape and sodomy, appellant's complicity convictions violate the constitutional prohibitions against double jeopardy. We do not agree with either contention. The record is replete with individual examples of appellant's intent to aid his codefendant by forcible compulsion. These included making her orally sodomize him while his codefendant raped her, and anally sodomizing her while she was being forced to perform oral sodomy on Wallace. *See Norris v. Commonwealth,* Ky.App., 668 S.W.2d 577 (1984). Appellant also drove the car during commission of the crimes. *See Mishler v. Commonwealth,* Ky., 556 S.W.2d 676 (1977). The undisputed facts clearly evidence separate criminal motivations on the part of this appellant; he intended to rape and sodomize the victim himself, and independently intended to aid his codefendant in doing the same. In short, it is difficult to imagine a more complicitous scenario of separate acts of facilitation than those presented by the evidence in this case. There is no error here.

## V. DID THE TRIAL COURT IMPROPERLY EXCLUDE DEFENSE EVIDENCE IN THE PENALTY PHASE?

■ Appellant asserts that he was substantially prejudiced by the trial court's refusal during the penalty phase to admit as allegedly mitigating evidence a plea agreement in a totally unrelated, but factually similar, Christian County case. He contends that the evidence was relevant and mitigating because it directly refuted the prosecutor's claim in his closing argument of the guilt phase when he said, "Now, I'm just going from my memory, but I don't remember this type of crime happening since I've been a prosecutor ... It's the sort of thing that might happen in Chicago or New York. It's a special crime here in Hopkinsville."

The thrust of appellant's argument is that had the jury known of this same prose-

cutor's recent willingness to plea-bargain the prior case (where two men had abducted, raped, and sodomized a minor female) down to third-degree rape and third-degree sodomy, they might not have recommended appellant's allegedly disproportionately severe sentence.

KRS 532.055 permits evidence to be introduced by the defendant for mitigation purposes.

> Mitigating evidence means evidence that the accused has no significant history of criminal activity which may qualify him for leniency. This section shall not preclude the introduction of evidence which negates any *evidence* introduced by the Commonwealth. (Emphasis added.)

KRS 532.055(2)(b).

Though this Court has expanded the statute by allowing the defendant to introduce evidence of minimum parole eligibility, *Boone v. Commonwealth,* Ky., 780 S.W.2d 615 (1989), and to introduce evidence that he has been convicted of only misdemeanors when the Commonwealth does not introduce the evidence, *Williams v. Commonwealth,* Ky., 810 S.W.2d 511 (1991), evidence of other defendants' judgments or plea agreements is outside the realm of the statute. The trial court's refusal to admit appellant's requested evidence was entirely correct.

## VI. WAS THE JURY POOL IMPROPERLY CONSTITUTED?

■ Appellant's final argument claims that his right to a trial by jury composed of a fair cross-section of the community was violated. Before its amendment, KRS 29A.040(1) provided that all county voter registration lists would constitute the master list of prospective jurors. In 1990, the legislature amended the statute to provide for the names to be drawn additionally from those persons holding valid drivers' licenses. The Amendment became effective on July 13, 1990. Because at the time appellant's trial commenced on July 16, 1990, the Christian County master list failed to include names from drivers' license lists, appellant claims the jury did not

represent a fair cross-section of the community.

This issue was unpreserved because appellant relies on an untimely objection. The governing Rule states that "a motion raising an irregularity in the selection or summons of the jurors or formation of the jury must precede the examination of the jurors." Part 2, § 28 of the Administrative Procedures of the Court of Justice. Appellant relies on an objection made in a motion for a new trial. Since the alleged defect was discoverable with reasonable diligence before the jury was accepted to try the case, *Harper v. Crawford*, Ky., 275 S.W.2d 897 (1955), appellant can be said to have acquiesced in the selection of his jury by standing trial, thereby waiving any right to complain on appeal.

The judgment and sentence of the Christian Circuit Court are affirmed.

STEPHENS, C.J., and LEIBSON, LAMBERT, REYNOLDS and WINTERSHEIMER, JJ., concur.

COMBS, J., dissents without opinion.