**Bethalene CAMPBELL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 87–SC–870–MR.**

Supreme Court of Kentucky.

Feb. 8, 1990.

Rehearing Denied May 24, 1990.

Gary E. Johnson, Asst. Public Advocate, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., Alva A. Hollon, Jr., Sp. Asst. Atty. Gen., Hazard, Beth Lewis Maze, Asst. Atty. Gen., Frankfort, for appellee.

LAMBERT, Justice.

Appellant Bethalene Campbell appeals to this Court as a matter of right from her conviction of first degree manslaughter for the killing of her former high school teacher, Frankie Joe Williams.

Appellant raises eight allegations of error. Some of the facts of the case are in dispute, but basically the events are as follows. Appellant, a resident of Hazard, Kentucky, married during her last year of high school and subsequently "dropped out." Her husband enlisted in the Army and the couple moved to Alabama where her husband took his course in basic training. While in Alabama, appellant's husband began to drink heavily and marital problems arose. During this period, she became romantically involved with George Wolfe, a person she contacted several times on the night of Frankie Joe Williams' death.

In an effort to help her husband with his drinking problem, appellant met with one of his superiors who allegedly "took her up in the mountains" and raped her. This occurred in September, 1986. Afterwards appellant had trouble sleeping. From September to November, she traveled between Kentucky and Alabama.

On the evening of November 17, 1986, appellant was at a party at the home of David Lee Hughes in Hazard, with her brother and several friends. The testimony reflects that the group was playing a card game where the winner of each hand had to drink a glass of wine. All were drunk. There was also testimony of drug use.

In the early morning hours of November 18, 1986, appellant left Hughes' home and took a taxi to the home of Frankie Joe Williams. She had angrily phoned Williams from Hughes' home earlier in the evening after Hughes allegedly had asked her about her relationship with Williams when she was 13 years old, while Williams was her teacher.

Appellant claims that Hughes raped her that evening and then called a cab for her. Appellant alleges that she was taken to Frankie Joe Williams' house against her wishes and David Hughes followed and pulled in the driveway right behind her, and with his gun in his hand, forced her to enter the house. Hughes denies ever being present at Williams' residence that evening.

While in the house, appellant made several calls to George Wolfe in Alabama. She asserts that Williams and Hughes were arguing over money for drugs. Appellant then alleges a total lapse of memory but remembers waking up in bed at the victim's home with no clothes on. She testified that she again telephoned George Wolfe.

Appellant stated that she did not remember picking up a gun and that she did not know where she had found it. She alleged that the bullet she discharged was meant for Hughes. Instead, it hit Frankie Joe Williams in the head. He fell to the ground, mortally wounded. Appellant testified she had no idea where Hughes went

but that she went looking for him. She stated that she would have shot him, too, if she had found him, and that "He'd better thank his God that he's not dead."

George Wolfe testified that in conversations with appellant on the evening of Williams' death, she never mentioned David Lee Hughes. Hughes asserts his sexual intercourse with appellant was consensual and that he never left his house, but that appellant took his gun when she went to the victim's home.

After the shooting, appellant made her way to her father's home, clothed only in the victim's robe, and carrying the gun with which she had killed Frankie Joe Williams. Her father phoned the police, and later that morning, appellant gave a statement to Detective Baker. Appellant told Detective Baker that no one else was present at the house of the victim except she and Frankie Joe Williams. She stated that she and the victim had been arguing.

■ Appellant first contends that she was denied due process of law and the trial court erred by failing to excuse for cause members of the jury pool who were acquainted with either the victim or the victim's family. Her complaint is based on the contention that she was forced to exercise peremptory strikes against seven potential jurors who should have been stricken for cause. After reviewing the transcripts of the voir dire of these seven, we find no evidence of abuse of discretion by the trial judge in not excusing them for cause.

This Court has held that a trial court has considerable discretion to determine whether a juror should be stricken for cause. Specifically, "unless clearly erroneous, the exercise of such discretion is a judicial prerogative and is not subject to review by an appellate court." *Scruggs v. Commonwealth*, Ky., 566 S.W.2d 405, 410 (1978), *cert. denied*, 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978).

The standard for review of whether a juror should be stricken was enunciated in *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985). We adopted the law as stated

in *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4, 7 (1981), that:

"[I]rrespective of the answer given on voir dire, the Court should presume the likelihood of prejudice on the part of a prospective juror because the potential juror has such a close relationship, be it familial, financial or situational, with parties, counsel, victims or witnesses." *Ward* at 407.

From the record, we discern no close relationship with respect to any of the jurors which would create a presumption of prejudice. None of the disqualifying factors set forth in *Ward, supra,* or *Marsch v. Commonwealth*, Ky., 743 S.W.2d 830 (1987), appear here.

■ In her second allegation of error, appellant contends she was deprived of her constitutional right to a fair trial and due process of law when the trial court denied her motion for a change of venue. Appellant moved orally for a change of venue three days into questioning members of the jury pool for qualification as potential jurors. At that time, 27 of more than 60 jurors had been interviewed individually and partially qualified. Of the 27, 13 informed the trial court during questioning that they knew either the victim or members of his family. Appellant's venue challenge was based primarily on her assertion that she could not be tried fairly by a jury composed of the victim's "friends." The trial judge observed that appellant was "presupposing that all these people who are acquainted with the Williams family are favorably disposed of the Williams family."

Appellant, the Commonwealth and the trial court all agreed that the potential jurors' responses to interview questions over the previous three days comprised the evidence relevant to her motion for change of venue. Nonetheless, over appellant's protest, the trial court insisted upon entertaining a written motion accompanied by affidavits pursuant to KRS 452.220(2) before making a finding.

Appellant now argues that having filed the motion supported by affidavits pursuant to KRS 452.220(2), she was entitled to a

change of venue. *See Brunner v. Commonwealth,* Ky., 395 S.W.2d 382 (1965). In *Brunner,* the trial court was found to have erred by denying the appellant's application for a change of venue where the Commonwealth filed no counter-affidavits in opposition and the trial court did not hold a hearing on the application. *Id.* at 384. In the case at bar, the prosecutor did not file a written response to appellant's motion, nor did he produce counter-affidavits or testimony to oppose a venue change.

The Commonwealth argues that the facts were readily distinguishable from those in *Brunner, supra.* At the outset, the Commonwealth had no reason to file a written response to appellant's oral motion. When the motion was tendered in writing on the morning of the following day, a hearing ensued during which the Commonwealth objected to the motion, citing the meticulous questioning of the qualified potential jurors and their sworn oaths to give appellant a fair trial. The trial judge reserved ruling on the motion until the full jury pool had been questioned, at which time he denied appellant's motion.

Under KRS 452.210, a trial court "shall" order a trial to be held elsewhere "if it appears that the defendant . . . cannot have a fair trial in the county where the prosecution is pending." *Id.* Addressing juror impartiality, the United States Supreme Court has said:

> "It is not required . . . that the jurors be totally ignorant of the facts and issues involved. In these days of swift widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd,* 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961).

In *Brewster v. Commonwealth,* Ky., 568 S.W.2d 232 (1978), this Court recognized that a change of venue is warranted where there is a "reasonable likelihood" the defendant cannot receive a fair trial. *Id.* at 235. In the instant case, the trial court had before it appellant's motion and affidavits, and five days of potential jurors' responses to questions asked during qualification interviews. Measuring by the "reasonable likelihood" standard, we cannot conclude the trial court lacked sufficient evidence to support its order denying appellant's motion.

"The question of whether venue should be changed addresses itself to the sound discretion of the trial court." *Payne v. Commonwealth,* Ky., 623 S.W.2d 867, 876 (1981), *cert. denied,* 456 U.S. 909, 102 S.Ct. 1758, 72 L.Ed.2d 167 (1982). Unless the accused has been prejudiced by a trial court's abuse of discretion, its order will not be disturbed on appeal. *Williams v. Commonwealth,* 287 Ky. 570, 154 S.W.2d 563 (1941). We find no abuse of discretion by the Perry Circuit Court's denial of appellant's motion for a change of venue.

■ As a third error, appellant alleges that the trial court erred to her substantial prejudice, denying her due process of law, by admitting, over her objection, favorable evidence of the victim's character.

The testimony complained of was given by Denny Fugate, a friend of Frankie Joe Williams. Fugate testified that Williams was a teacher, was sponsor of the Beta Club, that he worked a lot in extracurricular activities, and that he lifted weights and jogged six (6) miles every morning. Appellant asserts that this evidence was introduced solely for the purpose of inflaming the jury.

This Court previously addressed this very sort of testimony in the case of *McQueen v. Commonwealth,* Ky., 669 S.W.2d 519, *cert. denied,* 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). In that opinion, we strongly refuted appellant's contention that testimony given by the victim's father detailing some of the personal and educational activities of the victim was "shocking, sensational, provoked anger, inflamed the jury, aroused sympathy or hos-

tility and should have been excluded" since the victim was dead. *Id.* at 523. We held:

"It would, of course, behoove the appellant to be tried for the murder of a statistic, but we find no error in bringing to the attention of the jury that the victim was a living person, more than just a nameless void left somewhere on the face of the community." *Id.*

Our position on this matter was recently reiterated in *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534 (1988), where we confirmed that "[O]ur Court has recognized that a certain amount of background evidence regarding the victim is relevant to understanding the nature of the crime." *Id.* at 542. While we held in *Sanborn, supra,* that it is improper for the jury to make a decision on guilt because of the identity of the victim, such was not the circumstance in the instant case. There was but one witness who testified about the victim's activities, unlike the five in the *Sanborn* case. The testimony given by Mr. Fugate was not riddled with emotional outbursts, nor was it overly expounded upon by the prosecution.

Additionally, this Court has long held that whether the probative value of evidence is outweighed by possible prejudicial effect is within the sound discretion of the trial court. We find no error in the trial court's allowance of such testimony in this case.

■ The next error asserted by appellant is that the trial court erred to her substantial prejudice, denying her due process of law by admitting a tape of an alleged telephone message given by appellant on the victim's answering machine. This was objected to through appellant's motion *in limine* to prohibit the admission of the tape or a transcript thereof. This motion was overruled. Counsel for appellant subsequently objected to the same evidence at trial, and this motion was also overruled.

Appellant asserts that the trial court erred in allowing the jury to hear the contents of the tape recorded message, as an insufficient foundation was laid to meet Kentucky standards for admissibility. Let us begin by clarifying the fact that we are not dealing with a telephone conversation, and therefore that standard for admissibility is irrelevant. What we are dealing with is an answering machine's recorded message, and for this a different standard for admissibility must be met.

Although this Court has never specifically addressed the admissibility of messages recorded on an answering machine, these can be analogized to tape recorded statements. This Court has previously recognized the foundation requirements necessary for admitting a recording of a telephone conversation made with the consent of the prosecuting witness in *Commonwealth v. Brinkley,* Ky., 362 S.W.2d 494 (1962). Several factors were set out which, if followed, laid a proper foundation for admission of the recording.

"[A] proper foundation for the admission of a recording would consist of (1) a showing that the mechanical transcription device was capable of taking testimony, (2) a showing that the operator of the device was competent to operate the device, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the record, (7) a showing that the testimony elicited was freely and voluntarily made, without any kind of duress." *Id.* at 497.

In *Poteet v. Commonwealth,* Ky., 556 S.W.2d 893 (1977), this Court took a less rigorous approach to the laying of a proper foundation, reasoning that tape recordings are like photographs, in that it is not necessary to produce the photographer for verification of the photos "if it could have been provided by anyone with sufficient knowledge to assure the trial court of the accuracy of the photographs." *Id.* Additionally, Professor Lawson states that:

"[T]estimony sufficient to support a finding that tape recordings are what they are purported to be is sufficient evidence of authenticity for introduction of the recordings into evidence."

R. Lawson, *The Kentucky Evidence Law Handbook,* Sec. 7.10(III) (2nd. ed. 1976).

In this case, there is no break in the chain of custody as appellant contends. Detective Tommy Baker testified in chambers that he recovered the tape from the answering machine of Frankie Joe Williams during the morning hours following the shooting, that he kept the tape in his custody, and that the transcription of the tape was made while still in his possession. Additionally, he testified that the tape had not been tampered with or altered in any way since its removal from his possession. Appellant had made no showing that anyone had tampered with the recording. Reliability of the tape is not disputed.

The voice of appellant was identified by Detective Baker who had spoken with appellant for approximately three (3) hours on the morning she gave her statement to police, and the following day when he transported her to the hospital for a rape examination. Appellant makes issue of the fact that Detective Baker had never spoken to her on the telephone, and therefore his identification of her voice is based on insufficient knowledge. George Wolfe, however, had spoken with appellant at least seven times on the evening preceding and the morning of the shooting via telephone and he testified that the voice on the tape could be that of appellant. Appellant herself admitted to having made the call and to leaving the message. The only dispute is whether appellant left the message "Hi, it's Beth. Get ... out of the ... bed" or "Hi, it's Beth. Get ... on the ... bed." This slight variation is insignificant. Given the reliability of the tape as discussed, *supra*, its admission into evidence was not error.

■ Appellant next contends the trial court erred when it failed to grant a mistrial *sua sponte* after the Commonwealth Attorney questioned appellant concerning a statement which had earlier been ruled inadmissible. The cross-examination proceeded as follows:

"Q. When—Detective Baker took you down to the hospital for a rape examination didn't he?

A. Uh, I think it was him. I'm not for sure.

Q. Did you tell him you didn't—he ask[ed] you about a rape, you said you didn't know anything about a rape?

A. That's right, I said that."

Defense counsel objected immediately on the grounds that the statement had been made after appellant was advised by counsel not to talk to anyone about the events surrounding her arrest.

The trial court sustained appellant's objection, noting that he had already granted a motion to suppress the statement. The judge then admonished the jury, at appellant's request.

"The jury is admonished not to consider that statement because the defendant, at that time, had been represented by counsel and she was not to be questioned by any officer at that time without the presence of the counsel. And any statement that she might have made in response to any question is not to be considered under those circumstances."

No motion for mistrial was made.

In *Lynem v. Commonwealth*, Ky., 565 S.W.2d 141 (1978), we declined to reverse the appellant's conviction despite improper hearsay being admitted because the trial court sustained defense counsel's objection and admonished the jury as requested. As in the case at bar, appellant's "counsel didn't request any further relief. [Appellant] received all that he asked and cannot now complain." *Id.* at 144. *See also West v. Commonwealth*, Ky., 780 S.W.2d 600 (1989).

Furthermore, and more importantly, a statement taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but which is otherwise voluntary, is admissible to impeach testimony of the defendant. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Appellant had testified earlier that she was raped on the evening she shot Frankie Joe Williams. We see no error in the court's failure to grant a mistrial.

■ In her final specific allegation of error, appellant contends she was denied

due process of law when a judge other than the judge who presided at her trial conducted the sentencing hearing and signed the judgment of conviction. An examination of the record fails to reveal any objection before or after entry of the judgment. It is the duty of counsel to bring such matters to the attention of the court so as to prevent inadvertent mistakes such as occurred here. If the provisions of RCr 11.32 had been brought to the attention of Judge Manis in a timely fashion, correction would have been a simple matter. Appellant's failure to raise the issue precludes review in this Court.

All arguments presented in this appeal having been considered and rejected as grounds for reversal of the conviction, the judgment of the Perry Circuit Court is affirmed.

All concur.