**Melvin Lee PARRISH, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2001–SC–0192–MR.

Supreme Court of Kentucky.

Aug. 21, 2003.

Order Denying Petition for Rehearing and Granting Modification Dec. 18, 2003.

Daniel T. Goyette, Jefferson District Public Defender, J. David Niehaus, Deputy Appellate Defender, Louisville, Counsel for Appellant.

Albert B. Chandler III, Attorney General, N. Susan Roncarti, Assistant Attorney General, Louis F. Mathias, Jr., Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

WINTERSHEIMER, Justice.

Parrish was found guilty by a jury of intentionally murdering his cousin, Rhonda Allen, and her ten-year-old son, LaShawn, on December 5, 1997. He was also found guilty of attempting to murder Rhonda's five-year-old son, Jonathan. These crimes were committed in the course of a robbery. He was sentenced to death for the murder of the child; life without parole for the murder of the female victim; 20 years enhanced to life for the attempted murder of the second child, and 20 years enhanced to 50 years for the robbery.

At trial, there was evidence introduced that Parrish and others had spent the daytime of the murders smoking crack cocaine. The evidence indicates that Parrish asked his cousin to return the money he had paid her earlier that day for crack cocaine. When she refused, he stabbed her multiple times and took the money. The stabbing occurred in the living room of her apartment and Parrish then went to a back bedroom where he assaulted the children. One child survived and was able to testify that Parrish had attacked him and his brother. In a taped statement made to police the morning after the murders, Parrish admitted stabbing Rhonda,

"I asked her twice (to borrow back the money) and she said no and I guess I killed her." However, he denied doing any harm to the children. The prosecution introduced evidence at trial from a jailhouse informant who testified that while he was incarcerated with Parrish, the accused told him that he had committed the acts and intended to avoid conviction by faking insanity.

Upon conviction, Parrish filed this appeal. He raises twelve issues, each of which we have carefully reviewed for any error consistent with KRS 532.075(2).

## I. Valid Indictment

Parrish argues that the trial judge erred by conducting a trial and imposing sentences upon him on the counts of the indictment for which he was not charged. Specifically, he contends that there is no endorsement of the clerk showing that the indictment was returned in open court. Further, that the statement on the indictment, "True Bills Counts 1–5", makes it unclear whether the grand jury indicted him on counts one through five or one and five. He raises this issue pursuant to RCr 8.18. We find this argument to be without merit.

■ No motion was made before trial alleging any defects in the indictment. Now, on appeal, Parrish solicits this Court for a partial waiver of RCr 8.18 which requires raising defects in the indictment before trial. He has waived any defects in the indictment by failing to bring them to the attention of the trial judge. It should be remembered that at arraignment, Parrish waived a reading of the indictment and entered a plea of not guilty.

■ It has long been held by this Court that an indictment is sufficient if it informs the accused of the specific offense which is charged and does not mislead the accused. *Wylie v. Commonwealth*, Ky., 556 S.W.2d 1 (1977). In *Thomas v. Commonwealth*, Ky., 931 S.W.2d 446 (1996), it was observed that it is unnecessary pursuant to RCr 6.10 to restate all the technical requisites of the crime of which a defendant is accused, if the language of the indictment, coupled with the applicable statute, unmistakably accomplishes this end result. Here, the indictment is sufficient on its face. It informs Parrish that he is charged with murder in violation of KRS 507.020 (two counts); criminal attempt to commit murder in violation of KRS 506.010 and KRS 507.020; first-degree robbery, KRS 515.020, and as a first-degree persistent felony offender, KRS 532.080. The indictment sets out the charges in narrative form and is signed at the end by the foreperson of the grand jury. There can be no doubt as to what charges the grand jury returned. *Cf. United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). There was no error.

## II. Religious Beliefs of Jurors

■ Parrish asserts that the trial judge committed error by inquiring into the religious beliefs of prospective jurors during individual voir dire. We disagree.

It was not error to ask prospective jurors if they held any moral, religious, spiritual or personal beliefs that would interfere with their service as jurors on this death penalty case. No juror was questioned as to what, if any, religious denomination they were affiliated with. They were only asked if they had a religious or spiritual affiliation and what that organization's position was and whether they agreed with it. The questions were general in nature and had been tendered by defense counsel. There was no objection by Parrish. Decisions made during voir dire are generally regarded as trial strate-

gy. *Hodge v. Commonwealth*, Ky., 17 S.W.3d 824 (2000).

The use of these general questions did not infringe on or permit the improper use of peremptory strikes. There is no connection to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The selection process was proper and consistent with RCr 9.36. There was no violation of any provision of either the federal or state constitutions.

## III. Pregnancy of Female Victim

■ Parrish contends that the trial judge erred by admitting the statement of the medical examiner that the female victim had an intrauterine pregnancy which was discovered during the autopsy. There was no cross-examination on the subject and it was not mentioned to the jury again during the trial or sentencing procedure.

Parrish cites no case law to support his argument and we find this matter to be highly speculative. There was no violation of the Kentucky Rules of Evidence. The trial judge did not abuse in any way her discretion in permitting the medical examiner to simply state, as part of his autopsy findings, that the female victim was pregnant. *See Commonwealth v. English*, Ky., 993 S.W.2d 941 (1999).

■ Evidence about whom and what the victim was prior to death is properly admissible. *See Templeman v. Commonwealth*, Ky., 785 S.W.2d 259 (1990); *Campbell v. Commonwealth*, Ky., 788 S.W.2d 260 (1990); *McQueen v. Commonwealth*, Ky., 669 S.W.2d 519 (1984). The pregnancy of the female victim was not sensational or shocking or likely to induce any undue sympathy. The probative value of the evidence was not substantially outweighed by the danger of undue prejudice. *See* KRE 403. Parrish was not denied a fair trial or due process of law under either the federal or state constitutions.

## IV. Corroborating Witness

■ Parrish claims that the trial judge erred by allowing a corroborating witness, a jailhouse informant, to testify at trial because his testimony was inherently suspect and its reliability should have been the subject of a cautionary admonition. *Young v. Commonwealth*, Ky., 50 S.W.3d 148 (2001) considered a similar question and held that the credibility of witnesses and the weight to be given sworn testimony are matters for the jury to decide. Here, the jury decided and accepted the evidence. Parrish cross-examined the witness. There was no error.

## V. EED Instruction

■ Parrish argues that the trial judge erred by refusing to instruct on extreme emotional disturbance with respect to the child murder victim. He claims that there was sufficient evidence to justify an instruction on this theory. Defense counsel tendered instructions at trial on homicide that included the mitigating circumstance of extreme emotional disturbance as to both murder victims.

Even if there had been a triggering event as required for an EED instruction as to the female victim, that event was interrupted and there would have been no triggering event as to the child victim. Consequently, the trial judge was correct in not instructing the jury as to the existence of an EED factor as to the child victim. The jury did not find the existence of EED as it relates to the adult victim and if EED did not exist to mitigate the murder of the female victim, then no EED would exist to mitigate the murder of the child.

The evidence indicates that Parrish asked the female victim twice if he could borrow $500 and she refused. He then

went into the kitchen to get a knife and stabbed her while she sat on the couch in the living room. He admitted that he did not stop stabbing her even when she told him he could have the money. Parrish told police that there had never been an argument about it. He also admitted that the children knew him.

Parrish told the police that he did not remember stabbing the children but he told the jailhouse informant that he did stab them, stating that he stabbed one of the boys once and then decided to keep on stabbing him. The children were in a bedroom and their mother was dying on the living room floor.

Extreme emotional disturbance is defined as follows:

Extreme emotional disturbance is a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as defendant believed them to be.

*McClellan v. Commonwealth*, Ky., 715 S.W.2d 464 at 468–469 (1986).

■ Defense counsel argued that Parrish was mad at the adult victim to the point where he killed her and counsel claimed that was enough to establish EED. The trial judge was unconvinced. The trial judge properly stated that a defendant cannot create his own EED and that one does not get to EED because of a victim's reaction to a crime. Resistance by a victim to a robbery does not provide a reasonable explanation for an emotional state so enraged, inflamed or disturbed so as to cause a perpetrator to kill the victim. *Hodge, supra.* The trial judge correctly stated that not having rent money was not a reasonable excuse for killing and that there was no triggering event. Nevertheless, the trial judge correctly referred to *Spears v. Commonwealth*, Ky., 30 S.W.3d 152 (2001), as authority for allowing the jury to decide whether there was EED. The assault on the two children in a separate room where they were watching television could not be related to a triggering EED event.

The events here indicate that the adult victim told Parrish he could have the money and thus any possible triggering event was either interrupted or over. There was absolutely no reason to go into another room and stab two innocent minor children. It should be observed that Parrish did not kill the one-year-old child who was laying next to his mother on the couch. There was no federal or state constitutional violation and there was no error of any kind.

## VI. Penalty Phase Instructions/Judicial Admissions

■ Parrish complains that the penalty phase instructions for the child murder victim were improper because the phrase "engaged in the commission of a robbery" was vague and in addition, the Commonwealth admitted in closing argument that the child was killed so he could not serve as a witness to identify Parrish. He asserts that the penalty phase instructions were flawed.

Parrish maintains that the prosecution made a judicial admission in the guilt phase argument to the effect that Parrish murdered the child for the sole reason that

he would not be able to identify him. He asserts that that was a judicial admission and it would be manifestly unfair to allow the prosecution to turn around and argue in the penalty phase that an aggravator was Parrish's commission of a robbery. Part of the objection by defense counsel at trial was on the grounds of vagueness. The trial judge overruled the defense motion because she did not find the language ambiguous and because *Bowling v. Commonwealth*, Ky., 942 S.W.2d 293 (1997), settled the question of sequence.

The evidence indicates that all the murdered victims were killed during the commission of a robbery. Here, there were two aggravating circumstances proven. All that is needed is one. *Simmons v. Commonwealth*, Ky., 746 S.W.2d 393 (1988). Thus, this argument is without merit.

 The complained of remark was only a small portion of the closing argument in which the prosecutor recited the proposition that in the course of robberies the victims are often murdered. This part of the argument is not uncontroverted evidence such that no other reasonable conclusion could be drawn therefrom. There was no judicial admission. A prosecutor may comment on tactics, evidence and the falsity of a defense proposition in closing argument. The focus of appellate review is on the overall fairness of the trial and not the culpability of the prosecutor. *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407 (1987). The alleged prosecutorial misconduct is not so serious as to render the trial fundamentally unfair. Reversal is not required. *Partin v. Commonwealth*, Ky., 918 S.W.2d 219 (1996). There was no error.

VII. Language of Statute Not Vague

 As noted in the previous argument, Parrish continues to claim that the phrase "engaged in the commission of . . . robbery in the first degree" is unconstitutionally vague as applied in this case. Parrish resumes his argument that one of the two aggravating circumstances as to the adult and child victims was unconstitutionally vague and therefore void.

The complained of language in KRS 532.025(2)(a)(2) states as follows:

> The offense of murder or kidnapping was committed while the offender was engaged in the commission of arson in the first degree, robbery in the first degree, burglary in the first degree, rape in the first degree, or sodomy in the first degree.

The aggravating circumstance is not vague and has been properly applied in this case. There have been a number of cases rendered considering this issue including *Bowling, supra*. Parrish claims that *Bowling* does not answer the question, arguing that in that case, the person murdered was also the person robbed. In *Hodge*, it was made clear that this aggravating circumstance applied to victims other than the person robbed.

The statute in question provides the sentencing authority with a specific and detailed formula which is, simply stated, "engaged in the commission of a robbery in the first degree." The United States Supreme Court has adopted a common sense rule to determine if aggravating circumstances are unconstitutionally vague. That court noted that as long as the aggravators provide common and understandable terms to the jury, they are not unconstitutionally vague. *See Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Here, it is inconceivable that the jury, after hearing all the evidence, was misled in any way.

### VIII. Multiple Murders

 Parrish argues that the findings of the jury that the double murders were intentional and resulted in multiple deaths are unreliable because the jury may have relied on the death of the unborn child in making these findings. It may be recalled that the medical examiner testified that during the autopsy on the adult female victim, he discovered that she was pregnant at the time of her murder. Parrish concedes that the subject was not mentioned again to the jury during the trial or the penalty phase. However, he now argues that there is a significant probability that the jury relied on this improper evidence in reaching its decision as to the sentence. The instruction he requested, that the jury could not consider any aggravating circumstance not listed, was not given. The trial judge did not agree that the pregnancy of the adult victim was an aggravating factor and determined that the requested instruction would be misleading. We agree.

The trial judge did not abuse her discretion, and her decision and ruling were not arbitrary, unreasonable, unfair or unsupported by sound legal principles. *See English, supra.* There is no evidence of any nature to indicate that the jury considered the fact that the adult victim was pregnant. The argument presented by Parrish is entirely speculative. Here, Parrish was found guilty by the jury of two counts of intentional murder and any conceivable error would be totally harmless.

 In any event, the jury may consider evidence about the victim and about the impact of the murder on the family of the victim, even if it is not listed as a statutory aggravating circumstance. *Cf. Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). There was no error.

### IX. Reasonable Doubt Instruction

 The penalty phase instructions did not coerce or mislead the jury into believing that it must impose the death penalty. Parrish contends that the trial judge erred by instructing the jury on reasonable doubt as to the propriety of death as a punishment. He claims that the combined effect of penalty phase instructions No. 6 and 7 improperly invaded the province of the jury and created a substantial probability that the jury believed it should impose the death penalty. We find this argument to be without merit. The abstract analysis urged by Parrish is logically flawed. The mechanics of the argument resemble a tautology in that it is composed of simpler statements in a fashion that makes it seem true whether the simpler statements are true or false.

The two instructions related to this issue are as follows:

INSTRUCTION NO. 6

> You do not have to sentence the Defendant, Melvin Parrish, to death even if you find that one or both of the aggravating circumstances stated in these Instructions were proven beyond a reasonable doubt.

> You do not have to sentence the Defendant, Melvin Parrish, to a term of imprisonment for life without benefit of probation or parole, or to a term of imprisonment for life without benefit of probation or parole until he has served a minimum of 25 years of his sentence even if you find one or both of the aggravating circumstances stated in these Instructions were proven beyond a reasonable doubt,

INSTRUCTION NO. 7

> If you have a reasonable doubt as to the truth or existence of an aggravating circumstances listed in Instruc-

tion Nos. 3 or 4, you shall not make any finding with respect to it.

If upon the whole case you have a reasonable doubt whether the Defendant should be sentenced to death, you shall instead fix his punishment at a sentence of imprisonment.

These instructions do not violate the statutory system, nor do they invade the province of the jury. Instruction No. 7 followed the one in 1 Cooper, *Kentucky Instructions to Juries* (Criminal) § 12.08 (4th ed. Anderson 1999). We find this to be a proper statement of the law. The instructions allowed the jury to consider options other than death, even when a finding is made as to aggravating circumstances. *Wilson v. Commonwealth,* Ky., 836 S.W.2d 872 (1992). There was no error and no violation of either the federal or state constitutions. Instruction No. 7 did not, as Parrish asserts, instruct the jurors that they should impose the death penalty unless they had a reasonable doubt that death was the appropriate penalty.

### X. Penalty Phase Evidence

Parrish claims that the trial judge erred by prohibiting the introduction of evidence favorable to him at the penalty hearing in the form of letters and cards from his children and photographs of his children. He contends that the purpose of these items was to demonstrate that he was no monster and that his attack was an aberration.

The trial judge did permit defense counsel to call the children's mother and the maternal grandmother to testify as to the love and affection of the family, but the trial judge refused to allow the children to testify or to allow the introduction of the photographs, cards or letters. Although not introduced by way of avowal, the cards, letters, and photographs were made part of this record. Defense counsel only called the maternal grandmother of the children and she testified that the defendant and his children had shown love and affection for each other. The children of the accused were in the courtroom and were identified by the grandmother. Parrish was allowed to present facts related to his relationship with his children in overwhelming detail. The cards and letters were clearly hearsay and there is no significance in having the jury see them. There was no error.

### XI. Cumulative Error

Parrish complains that the errors enumerated in the previous arguments resulted in a penalty proceeding that violated federal constitutional requirements. This argument has no merit. Each of the allegations made by Parrish have been thoroughly reviewed and extensively discussed in this Opinion and are refuted by the record in this case. Repeated and collective reviewing of alleged errors does not increase their validity. There was no individual error and there was no cumulative error. *Cf. Tamme v. Commonwealth,* Ky., 973 S.W.2d 13 (1998); *Seay v. Commonwealth,* Ky., 609 S.W.2d 128 (1980). Parrish received a fundamentally fair trial. There was no error of any kind and there was no cumulative error. *See Bowling.*

### XII. Trial Judge Report

There was no error in regard to consideration of the report by the circuit judge so as to deny Parrish a fair appellate process. The report of the trial judge conforms to KRS 532.075. Here, the trial judge has provided the Supreme Court with the information necessary to properly perform the entire appellate process. The necessary elements of this report are more fully set out in *Slaughter, supra.* There was no error.

### XIII. Proportionality Review

This Court has determined on many occasions that the proportionality review it conducts in conformity with KRS 532.075(3) is constitutional. *See Tamme.* Under all the circumstances of this case, the death sentence is entirely appropriate. The proportionality review conducted by this Court does not violate due process or equal protection.

Pursuant to KRS 532.075(3), we have reviewed the death sentence imposed herein and conclude that it was not imposed under the influence of passion, prejudice or any other arbitrary factor. There was ample evidence to support the finding of aggravating factors concerning which the jury was instructed. We have also reviewed all the cases decided since 1970 in which the death penalty was imposed. We have given particular attention to those in which the defendant was sentenced to death for multiple intentional murders. All of the cases reviewed have been previously cited by this Court in a number of decisions. *See Hodge v. Commonwealth,* Ky., 17 S.W.3d 824 (2000) and *Simmons v. Commonwealth,* Ky., 746 S.W.2d 393 (1988). The comprehensive lists which are provided in each of these opinions are incorporated herein by reference. We have also reviewed the cases of *Woodall v. Commonwealth,* Ky., 63 S.W.3d 104 (2001); *Stopher v. Commonwealth,* Ky., 57 S.W.3d 787 (2001); *Mills v. Commonwealth,* Ky., 996 S.W.2d 473 (1999); *Bussell v. Commonwealth,* Ky., 882 S.W.2d 111 (1994); *Sanborn v. Commonwealth,* Ky., 892 S.W.2d 542 (1994); *Wilson v. Commonwealth,* Ky., 836 S.W.2d 872 (1992); *Taylor v. Commonwealth,* Ky., 821 S.W.2d 72 (1990); *Sanders v. Commonwealth,* Ky., 801 S.W.2d 665 (1990); *Epperson v. Commonwealth,* Ky., 809 S.W.2d 835 (1990); *Slaughter v. Commonwealth,* Ky., 744 S.W.2d 407 (1987).

We have also considered whether the sentence of death is excessive or disproportionate to the penalty imposed in these cases as required by statute and have therefore considered all circumstances of the crime committed here and all of the evidence surrounding the defendant and his background. The information used in considering this penalty has been compiled in accordance with KRS 532.075(6)(a), (b) and (c). On the basis of this review, we have determined that the sentence of death in this case was not excessive or disproportionate to the penalties imposed in similar cases considering both the crimes and the defendants.

Parrish received a fundamentally fair trial devoid of any state or federal constitutional violations.

The judgment of conviction and the sentences imposed are affirmed.

LAMBERT, C.J., COOPER and GRAVES, JJ., concur.

KELLER, J., concurs by separate opinion.

JOHNSTONE, J., concurs except as to Issue IX in which he joins the separate dissenting opinion of STUMBO, J.

KELLER, Justice, concurring.

I vote to affirm Appellant's convictions and sentences, but I write separately as to Parts III ("Pregnancy of Female Victim") and IX ("Reasonable Doubt Instruction") because I disagree with the majority's analysis of the allegations of error addressed therein.

As to Part III, I disagree with the majority's suggestion that the trial court properly allowed testimony that one of Appellant's victims was pregnant when she was killed. Simply stated, evidence of the victim's pregnancy did not have "any ten-

dency to make the existence of any fact that is of consequence to the determination of the action any more probable or less probable than it would be without the evidence."[1] The majority cites no authority for its assertion that, because the victim's pregnancy was related to "who she was," testimony about her pregnancy was probative as to any genuine issue presented at the culpability phase of Appellant's trial. The evidence of Appellant's victim's pregnancy was irrelevant and inadmissible.[2] And the trial court had no "discretion" to permit evidence that lacked any probative value. But the erroneous introduction of evidence constitutes reversible error only when the defendant is prejudiced by the evidence.[3] I recognize the possibility that a defendant could suffer prejudice from this type of evidence, and I acknowledge Justice Stumbo's justifiable belief that such prejudice was present in this case. However, I agree with the majority that the testimony as to the victim's pregnancy was fleeting in comparison to the other, inculpatory evidence in this case, and I further observe that the jury did not sentence Appellant to death for his murder of the pregnant victim. Because the verdict in this case would not have been any different if the trial court had properly excluded this evidence, Appellant's substantial rights were not prejudiced and the trial court's error was harmless. I thus concur in the result reached by the majority.

As to Part IX, I agree with the majority's conclusion that the wording of Instruction No. 7 did not create a substantial risk that the jury would believe that it must impose the death penalty unless it had a reasonable doubt as to whether that penalty was appropriate. I take issue, however, with the majority opinion's more substantive defense of the trial court's inclusion of Instruction No. 7. I observe that the author of the treatise that contains the form instruction from which Instruction No. 7 was adapted describes the form instruction as "repetitious of [the introductory capital sentencing phase instruction] and ... unnecessary."[4] In addition, I find it impossible to reconcile today's majority's characterization of Instruction No. 7 as "a proper statement of the law"[5] with *Skaggs v. Commonwealth*,[6] in which this Court held that "[t]here is no requirement that the jury be instructed to find that death is the appropriate punishment beyond a reasonable doubt."[7] Accordingly, I believe the better practice in capital cases would be to omit the instruction in order to avoid any risk that it might confuse a jury.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. I disagree with the majority opinion on Issue III and Issue IX raised by Appellant. First, it is my opinion that the trial court erred in allowing the medical examiner to testify that Rhonda Allen was pregnant when she was murdered.

---

1. KRE 401.

2. KRE 402 ("Evidence which is not relevant is inadmissible.") *See also* Evidence Rules Study Commission, Kentucky Rules of Evidence, Commentary to KRE 402 (Final Draft 1989) ("The requirement of relevancy must be satisfied before evidence may be admitted and before any of the other rules of evidence law become consequential.").

3. RCr 9.24.

4. 1 Cooper, *Kentucky Instructions to Juries* (Criminal) § 12;08, comment (4th ed. Anderson 1999).

5. *Parrish v. Commonwealth*, Ky., op. at 207.

6. Ky., 694 S.W.2d 672 (1985).

7. *Id.* at 680.

Introducing evidence of Ms. Allen's pregnancy was irrelevant since there was no correlation between this evidence and her death. KRE 402 provides that irrelevant evidence is inadmissible.

The medical examiner's testimony was introduced during the guilt phase of the trial. During this phase, the jury's role is to evaluate the relevant facts concerning guilt or innocence and the intent of the accused. Knowledge that Ms. Allen was pregnant would not enhance the jury's ability to make that determination when there was no evidence offered to suggest that the accused knew Ms. Allen was pregnant and that his knowledge contributed to his acts. This Court observed in *Chumbler v. Commonwealth*, Ky., 905 S.W.2d 488, 496 (1995) that "[w]here the value of evidence for a legitimate purpose is slight and the jury's probable misuse of the evidence for an incompetent purpose is great, the evidence may be excluded altogether" (quoting *Nugent v. Commonwealth*, Ky., 639 S.W.2d 761, 764 (1982)). It is a reasonable presumption that this information would characterize Appellant as the murderer of a mother and her unborn child and that such a characterization would have an undue prejudicial effect.

Additionally, KRE 403 provides that relevant evidence may be excluded when its probative value is substantially outweighed by its prejudicial effect. The probative value of the medical examiner's testimony as to Ms. Allen's pregnancy did not outweigh the potential for undue prejudice to Appellant. The testimony was not offered to satisfy the Commonwealth's burden. Accordingly, the testimony was inadmissible.

Contrary to the Commonwealth's belief, no error is harmless when the effect is undue prejudice. It is therefore my opinion that the trial court erred by allowing the medical examiner to testify that Ms. Allen was pregnant at the time of her murder.

Secondly, it is my opinion that the trial court erred by allowing the inclusion of Penalty Instruction 7 that may be interpreted to contend that death is the first option for the jury to consider. Such an interpretation may result in the inquiry of a dissenting juror's reasonable doubt about why death should not be imposed.

Contrary to the reasoning of the majority, I believe that the second sentence of Penalty Instruction 7, "if upon the whole case you have a reasonable doubt whether the defendant should be sentenced to death, you shall instead fix his punishment at a sentence of imprisonment," implies that death is the first option. It is a reasonable presumption that the jury may have erroneously interpreted Penalty Instruction 7 to mean that it was to impose death unless it had a reasonable doubt that the death penalty should be imposed.

To eliminate the potential for erroneous interpretation, it is my opinion that the sentence of death should be vacated and a new sentencing hearing held, at which time Penalty Instruction 7 would be omitted.

JOHNSTONE, J., joins this dissent as to Issue IX.