Shawn WINDSOR, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2008–SC–000383–MR.

Supreme Court of Kentucky.

Aug. 26, 2010.

As Corrected Sept. 20, 2010.

As Modified on Denial of Rehearing March 24, 2011.

As Corrected March 29, 2011.

Daniel T. Goyette, Louisville Metro Public Defender, James David Niehaus, Deputy Appellate Defender, Office of the Louisville Metro Public Defender, Louisville, KY, Shawn Windsor, Kentucky State Penitentiary, Eddyville, KY, Counsel for Appellant.

Jack Conway, Attorney General, James Hays Lawson, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, David A. Smith, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

Appellant, Shawn Windsor, appeals a judgment of the Jefferson Circuit Court imposing two death sentences. Windsor entered an unconditional guilty plea to two counts of murder, one count of felony theft, and one count of violating a protective order. Windsor admitted that he murdered his wife, Betty Jean, and their son, Corey, by stabbing them with a kitchen knife and beating them with a dumbbell.

Following Windsor's arrest some six months after the crimes, the case initially proceeded towards trial. On July 7, 2006, the day that the trial was scheduled to commence, Windsor took an overdose of prescription medication. He was taken to the hospital for treatment and later released. In light of Windsor's suicide attempt, the trial court conducted a competency hearing on July 13, 2006. Windsor was present.

Two psychiatrists testified at the hearing. Dr. Tim Allen, a Kentucky Correctional Psychiatric Center (KCPC) psychiatrist, examined Windsor after his suicide attempt. Dr. Allen testified that he had reviewed three prior KCPC mental evaluations, all of which concluded that Windsor was competent to stand trial. Following his own evaluation of Windsor, Dr. Allen likewise concluded that he was competent to stand trial.

Dr. Walter Butler, a psychiatrist at Louisville Behavioral Health Service, also examined Windsor and concluded that he was still suffering from the after-effects of the prescription drug overdose. Accordingly, Dr. Butler found Windsor incompetent to stand trial at that time and recommended further testing. The trial court ruled the following day, determining that Windsor was competent to stand trial.

Three days later, on July 17th, Windsor announced that he wished to enter a plea of guilty and accept a sentence of death. A *Boykin* hearing was conducted. In addition to the colloquoy required by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the trial court inquired about Windsor's health, prior mental health issues, current medication, and drug use. Windsor accepted complete and unqualified responsibility for the charged crimes. He verbally repeated his desire to plead guilty at least five times in open court, in addition to signing AOC Form 491.1 (Commonwealth's Offer on a Plea of Guilty) and AOC Form 491 (Motion to Enter Guilty Plea). The trial court made a finding on the record that the plea was knowingly, voluntarily, and intelligently made, and then accepted the guilty plea. However, the trial court denied Windsor's request to be sentenced immediately.

A two-day sentencing hearing was conducted in October 2006. The trial court found the existence of two statutory aggravating circumstances beyond a reasonable doubt: that Windsor intentionally caused multiple deaths; and that a valid protective order was in effect against Windsor at the time he murdered his wife. Against Windsor's repeated objections, defense counsel presented evidence in mitigation, including the testimony of a psychiatrist, a psychologist, and a mitigation specialist. The trial court ultimately sentenced Windsor to death for the murders of his wife and son, five years imprisonment for theft, and twelve months imprisonment for violation of a protective order.

Windsor now appeals as a matter of right. Ky. Const. § 110(2)(b). Further facts will be developed as necessary.

### Subsequent Competency Hearing

■ Windsor first argues that the trial court erred by failing to postpone the proceedings until a subsequent, thorough competency hearing could be held. The claim is preserved by his RCr 8.06 motion "to stay proceedings pending a determination of Defendant's competency in light of his request for the Court to impose the death penalty." The trial court denied the motion, stating that it had not been presented with any indication that Windsor's competency had changed since the competency hearing held just four days earlier.

■ RCr 8.06 provides that all proceedings against a criminal defendant shall be postponed when "there are reasonable grounds to believe that the defendant lacks the capacity to appreciate the nature and consequences of the proceedings against him or her, or to participate rationally in his or her defense."[1] *See also* KRS 504.100. The standard of review of a trial court's decision to conduct a competency hearing is whether a reasonable judge should have experienced doubt with respect to competency. *Gray v. Commonwealth*, 233 S.W.3d 715, 718 (Ky.2007). It is within the trial court's sound discretion to determine whether "reasonable grounds" exist to question competency, though once such grounds do exist, a competency hearing is mandatory. *Id.* Windsor does not challenge the trial court's initial determination of competency to stand trial following the July 13th competency hearing. Rather, Windsor asserts that the trial court erred in denying his motion to stay the proceeding and hold a hearing on July 17th to determine his competency to plead guilty and request a death sentence for the two murders. Thus, the issue before this court is whether the trial court abused its discretion in finding no reasonable grounds to question Windor's competency to plead guilty and request a death sentence.

■ We recognize that there is a higher standard of competency for an individual who wants to enter a plea, and seek the death penalty versus the standard of competency to stand trial. *Chapman v. Commonwealth*, 265 S.W.3d 156, 181 (Ky.2007). The standard to determine competency to *stand trial* is whether, "as a result of a mental condition, [the defendant lacks the] capacity to appreciate the nature and consequences of the proceedings against one or to participate rationally in one's own defense." *Id.* at 173-174. Conversely, the standard to determine competency to *plead guilty, waive jury*

---

1. RCr 8.06 outlines the standard to determine competency to stand trial and when proceedings against a criminal defendant should be postponed. Nonetheless, the "reasonable grounds" language of RCr 8.06 applies with equal force with regard to competency to plead guilty and request a death sentence as discussed later in this Opinion. *See Chapman v. Commonweath*, 265 S.W.3d 156, 180 (Ky. 2007).

*sentencing and presentation of mitigating evidence, and request a death sentence* is "whether [the defendant] has capacity to appreciate his position and make a rational choice with respect to [pleading guilty, waiving jury sentencing, waiving mitigating evidence, and seeking the death penalty] or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Id.* at 180. (*citing Rees v. Peyton,* 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966)).

While the trial court should have applied the heightened standard had it granted defense counsel's motion to stay the proceeding and hold a second hearing,[2] the trial court did not abuse its discretion in determining that reasonable grounds did not exist to question Windsor's competency to plead guilty and request a death sentence. The trial court found Windsor competent to stand trial following a full hearing only four days before the RCr 8.06 motion was made. No evidence was presented with the motion indicating that Windsor's mental health had deteriorated since the July 13th competency hearing. *See Harston v. Commonwealth,* 638 S.W.2d 700, 701 (Ky.1982) ("[Rule 8.06] does not place upon the trial court a duty to hold hearing after hearing in the absence of some appearance of change in the defendant's condition since the ruling on competency."). Rather, defense counsel presented a letter from Dr. Butler, who restated his opinion that Windsor was incompetent based on his severe depression. However, Dr. Butler's letter was not the result of a new evaluation of Windsor, but simply a reiteration of the professional opinion he gave at the competency hear-

ing. Furthermore, during the plea proceedings, the trial court questioned Windsor directly after defense counsel made the motion to stay proceedings. He stated that he felt fully competent and felt no residual effects from the overdose. The video record of the competency hearing reveals that Windsor's demeanor, responses, and affect in the courtroom were appropriate and coherent. *Cf. Hunter v. Commonwealth,* 869 S.W.2d 719, 724 (Ky. 1994) (citing defendant's "bizarre behavior" and "inappropriate laughter" as factors in warranting RCr 8.06 stay of proceedings).

In essence, Windsor points only to his intention to plead guilty and accept the death penalty as a basis for a new competency hearing.[3] In *Chapman,* we specifically rejected the notion that a defendant who seeks to plead guilty and receive the death penalty is inherently incompetent. 265 S.W.3d at 175. In light of these circumstances, we do not believe that the trial court abused its discretion in denying the RCr 8.06 motion. Windsor had been found competent to stand trial just four days prior, and no new circumstances were presented to the trial court that would constitute "reasonable grounds" to question Windsor's competency to plead guilty and request a death sentence.

### Determination of Appropriate Punishment

Windsor next argues that the trial court failed to find beyond a reasonable doubt that death was the appropriate punishment. The issue is unpreserved for appellate review. Nonetheless, we consid-

---

**2.** Although no Kentucky case had no yet adopted the *Rees* standard, we formally espoused the heightened standard since the time of the relevant proceedings. *See Chapman,* 265 S.W.3d at 180.

**3.** We reiterate that we are discussing a hearing to evaluate Windsor's competency to enter plea and seek the death penalty.

er the claim in light of the penalty imposed and pursuant to KRS 532.025(2).

According to Windsor, the requirement set forth in KRS 500.070(1) that the Commonwealth must prove "every element of the case beyond a reasonable doubt" applies to the capital punishment provisions of KRS 532.025. Thus, Windsor argues that the sentencing body—here, the trial court—must be convinced beyond a reasonable doubt that death is the appropriate penalty. Windsor claims that the trial court in this case failed to make such a finding.

KRS 532.025(3) requires that the sentencing jury or judge find beyond a reasonable doubt that at least one aggravating circumstance exists before a capital sentence may be imposed. There is no requirement in the plain language of the statute that the sentencing jury or judge must also make a determination beyond a reasonable doubt that capital punishment is appropriate. A majority of this Court has recently reaffirmed that Kentucky's capital sentencing scheme does not require the jury to find that death is the appropriate penalty beyond a reasonable doubt. *Brown v. Commonwealth,* 313 S.W.3d 577, n. 2 (Ky.2010). *See also Skaggs v. Commonwealth,* 694 S.W.2d 672, 680 (Ky.1985) ("There is no requirement that the jury be instructed to find that death is the appropriate punishment beyond a reasonable doubt.").

*Waiver of Jury Sentencing in Capital Case*

■ Windsor claims that KRS 532.030(4) requires jury sentencing in capital cases, and that this requirement cannot be waived by the defendant. "Clearly, under Kentucky law a criminal defendant has a statutory right to have his sentence set by a jury." *Wilson v. Commonwealth,* 765 S.W.2d 22 (Ky.1989). In *Chapman,*

we considered whether this right may be waived when a capital offense is charged:

> [W]e decline to declare that a defendant may not waive his right to have a jury fix his sentence. Such a holding would appear to be in conflict with RCr 9.26, as well as our previous recognition that a defendant has the concomitant right to waive a trial by jury. We have not been cited to any authority that moves us to find that a defendant loses the right to waive jury sentencing simply because that defendant has pleaded guilty to a capital offense.

265 S.W.3d at 177.

Windsor has presented no persuasive reason to revisit this recent holding.

*Constitutionality of Judge Sentencing in Capital Case*

■ Where, in the previous argument Windsor argued that jury sentencing cannot be waived under our statutory scheme, he next makes an identical argument under the Kentucky Constitution. Windsor asserts that Section 11 of the Kentucky Constitution prohibits the imposition of a sentence by a trial judge. Section 11 declares that no one can "be deprived of his life, liberty or property, unless by the judgment of his peers or of the law of the land." Windsor argues that to the extent KRS 532.025(3) relegates the sentencing jury to an "advisory role"—and that the jury's sentencing recommendation is not binding on the trial court—it is unconstitutional.

■ However, Kentucky confers no constitutional right to jury sentencing. "The constitutional right to trial by jury extends to the trial of the issue of guilt or innocence where a plea of not guilty has been entered and does not extend to the fixing of the penalty." *Williams v. Jones,* 338 S.W.2d 693, 694 (Ky.1960). *See also Ward v. Hurst,* 300 Ky. 464, 189 S.W.2d

594 (1945); *Commonwealth v. Johnson,* 910 S.W.2d 229, 230 (Ky.1995) (recognizing in death penalty case that Kentucky constitution "fails to secure any right of jury sentencing"). For this reason, Windsor's claim that KRS 532.025(3) infringes upon a constitutional right is without merit.

### Record on Appeal

■ KRS 532.075 mandates review by this Court whenever the death penalty is imposed. Subsection (1) of the statute requires that the review be conducted "on the record" and orders the circuit clerk to "transmit the entire record and transcript to the Supreme Court" for purposes of the review. Windsor argues that the review required by KRS 532.075 cannot be conducted unless and until the circuit court prepares a written transcript of the proceedings in this case. Windsor further claims that the failure to consider a written transcript precludes attachment of our jurisdiction to conduct the required review.

KRS 532.075 does not require that a transcript be prepared, nor does it require this Court's review to be conducted only on a written transcript of the proceedings. The plain language of the statute is that our review be conducted "on the record." Video recordings of the proceedings, along with the clerk's written record, constitute the official record on appeal. CR 98(3). A video recording of the proceedings satisfies the requirements of KRS 532.075.

We have also considered Windsor's request that the trial court's KRS 532.075 report be "disregarded" by this Court. This argument is vague and it is not entirely clear what relief is being requested. Suffice it to say, the report is required by statute and the trial court, in this case, satisfied its statutory duty.

### Re-sentencing

■ In his final claim, Windsor asks that his sentence be vacated pursuant to KRS 532.075(5)(b), which permits this Court to set aside a death penalty based on "the record and argument of counsel." In support of this request, Windsor points to the Commonwealth Attorney's refusal to consider a sentence other than death. He also urges that his sentence be vacated so that, upon remand, the sentencing judge or jury may be provided with comparison information in the form of similar criminal cases. Finally, Windsor reiterates his argument that his competency at the time of his guilty plea was questionable and warrants re-examination. As an aside, Windsor notes that he no longer wishes to be sentenced to death.[4]

■ Windsor has presented no circumstance that would require reversal of his sentence. The Commonwealth enjoys broad discretion in its consideration of plea bargains and in its decisions with respect to the charging of crimes and the request for certain penalties. "The Commonwealth is under no duty to accept an offer of a plea in exchange for a sentence less than death." *Moore v. Commonwealth,* 983 S.W.2d 479, 487 (Ky.1998). The mere fact that the Commonwealth insisted on seeking the death penalty in this case is not an indication of prosecutorial misconduct or arbitrariness.

There is no statutory authority for the proposition that the sentencing judge or jury must consider the comparative information described in KRS 532.075(5)(b) *prior* to sentencing. The plain language of the statute is clear that the comparative

---

4. There is nothing in the current record on appeal that substantiates this sentiment. Regardless, even if such a request was of record, it bears no relevancy to the issues presently raised.

information be provided to the lower court when *re-sentencing* is ordered.

For these reasons, we do not believe that re-sentencing is warranted in this case.

### KRS 532.075(3) Review

 As required by KRS 532.075(3), we have reviewed the record and conclude that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. The evidence supports the judge's finding that two statutory aggravating factors exist in this case. Specifically, Windsor admitted that he intentionally committed a double murder and that he murdered his wife while a protective order on her behalf was in effect. *See* KRS 532.025(2)(a)(6); KRS 532.025(2)(a)(8).

Having considered both the crimes and the defendants in similar cases, particularly those involving multiple murders, we cannot conclude that Windsor's punishment is disproportionate or excessive. Windsor admitted to the murders of his wife and eight-year-old son. Their deaths were the result of multiple stab wounds and bludgeoning inflicted by a dumbbell. The only appropriate characterization of Windsor's crimes is brutal, senseless, and exceedingly heinous. The penalty was not disproportionate or excessive in relation to Windsor's crimes or in relation to other defendants who have committed similar crimes. *See Johnson v. Commonwealth*, 103 S.W.3d 687 (Ky.2003) (noting particularly brutal nature of murder); *Chapman*, 265 S.W.3d at 156 (involving murder of two children); *Parrish v. Commonwealth*, 121 S.W.3d 198 (Ky.2003) (involving murder of adult woman and her ten-year-old son); *Hodge v. Commonwealth*, 17 S.W.3d 824 (Ky.2000) (involving murder of husband and wife).

### Conclusion

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

MINTON, C.J.; NOBLE, SCHRODER and SCOTT, JJ., concur.

ABRAMSON and VENTERS, JJ., concur except as to the issue of whether the appropriateness of the death penalty must be determined beyond a reasonable doubt. On that issue, Abramson and Venters, JJ., dissent for the reasons stated in Justice Abramson's separate opinion in *Brown v. Commonwealth*, 313 S.W.3d 577 (Ky.2010), in which Venters, J., joined.