# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  JUNE 13, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0072-MR

NATHANIEL LUCAS                                                                          APPELLANT

V.
ON APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE JOHN D. SIMCOE, JUDGE
NO. 21-CR-00746

COMMONWEALTH OF KENTUCKY                                                    APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Nathaniel Lucas was convicted in Hardin Circuit Court of robbery in the first degree, being a convicted felon in possession of a handgun, tampering with physical evidence, and being a persistent felony offender in the first degree. The jury recommended a sentence of thirty-five years in the aggregate, with the sentence of twenty years for robbery in the first degree and the sentence of fifteen years for possession of a handgun by a convicted felon running concurrently, and the additional fifteen-year sentence for tampering with physical evidence running consecutively, for a total sentence of thirty-five years.[1]  Following the jury's recommendation, the trial court sentenced Lucas

---

[1] The Parties' Briefs differ regarding the terms of Lucas's sentences.  Lucas's Brief states that the first-degree robbery sentence (twenty years) runs concurrently with the possession of a handgun by a convicted felon sentence (fifteen years) and consecutively with the tampering with physical evidence sentence (fifteen years), for a total of thirty-five years.  The Commonwealth's Brief states that Lucas was sentenced

to thirty-five years' incarceration. Lucas now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). Having carefully reviewed the record and the briefing of the parties, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 29, 2021, at about 4:13 a.m., a robbery occurred at the Speedway gas station located on North Mulberry Street in Elizabethtown, Kentucky. During the robbery, the perpetrator brandished a gun and demanded that the store clerk place cash and a carton of cigarettes into an orange bag. The perpetrator then left the store.

The events of the robbery were captured on surveillance video. After the robbery, the Speedway clerk contacted 911 and offered a general description of the robber as a black male, dressed in camouflage and an orange vest, and wearing a mask. Law enforcement immediately arrived on the scene. Upon searching the area, Deputy Kevin Johnson of the Hardin County Sheriff's Office quickly detained a suspect who matched the clerk's description. The suspect was determined to be Lucas, who was sweating despite the cool weather that evening. Law enforcement also recovered in Lucas's vicinity an orange bag containing a shirt, a camouflage hat, a carton of cigarettes, and approximately $200 in cash. Found nearby was an additional bag containing a gun and

---

to concurrent sentences for possession of a handgun by a convicted felon (fifteen years) and tampering with physical evidence (fifteen years) that run consecutive to his sentence for robbery in the first degree (twenty years), also totaling thirty-five years. A review of the trial court's judgment reveals that Lucas is correct.

bearing a tag with a Lake City, Florida address. The gun was owned by a resident of Lake City, where Lucas is from.

While other detectives interviewed Lucas, along with his girlfriend and niece, Sergeant Madison Kuklinski reviewed still photographs from surveillance footage taken at the Speedway. Sergeant Kuklinski noticed that, in one of the photographs, the suspect was wearing a large and distinctive watch. She further observed that Lucas was not wearing a watch in the interview room. Sergeant Kuklinski discussed the missing watch with the other officers. Deputy Johnson recalled placing handcuffs on Lucas at the scene of the robbery and putting the handcuffs over a watch on Lucas's wrist. As a result, Johnson checked the police cruiser in which he had placed and transported Lucas upon his arrest and eventually recovered a watch from the backseat. The watch was tucked in the backseat of the vehicle and matched the general description of the one worn by the suspect in the surveillance video. When Sergeant Kuklinski confronted Lucas regarding the watch, Lucas persisted in denying his involvement in the robbery.

Lucas was charged with robbery in the first degree, tampering with physical evidence, possession of a handgun by a convicted felon, and being a persistent felony offender in the first degree. The jury found Lucas guilty on all counts and recommended a sentence of thirty-five years, which the trial court imposed. This appeal followed.

**ANALYSIS**

Lucas raises two issues for review by this Court: (1) whether the trial court erred by failing to grant a directed verdict on the tampering with physical evidence charge; and (2) whether the prosecutor engaged in flagrant misconduct during closing argument. We review each issue in turn, providing additional facts as necessary.

## I.    Lucas Was Not Entitled To A Directed Verdict On The Tampering With Physical Evidence Charge.

Lucas first argues that the trial court erred in refusing to grant his motion for a directed verdict on the tampering charge. Lucas failed to preserve this issue for appeal. Although he referenced the tampering charge in making his motion, he never specified the particular elements that the Commonwealth failed to prove. Lucas also neglected to raise the issue in his subsequent motions for judgment notwithstanding the verdict and for new trial. Kentucky Rules of Criminal Procedure (RCr) 10.24, 10.02, & 10.06.

To preserve an alleged directed verdict issue for appeal, a criminal defendant must: (1) move for a directed verdict at the close of the Commonwealth's evidence; (2) renew the same directed verdict motion at the close of all the evidence, unless the defendant does not present any evidence; (3) identify the particular charge the Commonwealth failed to prove; and (4) "*identify the particular elements of that charge the Commonwealth failed to prove.*" *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020) (emphasis added). Lucas neither identified which elements of the tampering count the Commonwealth failed to prove, nor provided any specificity whatsoever

4

regarding the grounds for his motion. This deficiency amounts to a clear failure to properly preserve Lucas's directed verdict claim for appellate review.[2]

When a defendant fails to preserve an error based upon the sufficiency of the evidence, an appellate court may review the issue for palpable error. *Chavies v. Commonwealth,* 354 S.W.3d 103, 113 (Ky. 2011), *abrogated on other grounds by Roe v. Commonwealth,* 493 S.W.3d 814 (Ky. 2015). Because Lucas requests palpable error review, we therefore consider whether the trial court's denial of a directed verdict in favor of Lucas constituted palpable error. The first step of a palpable-error analysis involves determining whether an error occurred. *Newcomb v. Commonwealth,* 410 S.W.3d 63, 19 (Ky. 2013). Only after establishing the "error" component of the test will a reviewing court address the remaining elements. Those elements include whether such error (1) was clear or plain under current law; (2) affected the "substantial rights" of a party; and (3) resulted in manifest injustice, *i.e.,* the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable." RCr 10.26; *Commonwealth v. Jones,* 283 S.W.3d 665, 668 (Ky. 2009) (quoting *Martin v. Commonwealth,* 207 S.W.3d 1, 4 (Ky. 2006)).

A defendant is entitled to directed verdict only if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt. *Commonwealth*

---

[2] The Commonwealth notes in its Brief that Lucas failed to renew his motion for a directed verdict after returning for oral arguments. Since Lucas presented no evidence in his defense, Lucas was not obliged to renew his motion at the close of all the evidence for purposes of preservation.

5

*v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). The Commonwealth must present evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence. *Id.* at 187-88. Nonetheless, on motion for a directed verdict of acquittal, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Id.* at 187. Questions regarding the credibility and weight to be given to the evidence are reserved for the jury, and if the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. *Id.*

We find no error in the trial court's denial of Lucas's motion for a directed verdict on the tampering charge. Lucas urges this Court to follow the reasoning of *Commonwealth v. James* and its progeny in finding that his motion should have been granted. 586 S.W.3d 717, 724-25 (Ky. 2019); *Commonwealth v. Bell*, 655 S.W.3d 132 (Ky. 2022); *Saxton v. Commonwealth*, 671 S.W.3d 1 (Ky. 2022). More specifically, he contends that because the watch was left in the backseat of the vehicle in which he was transported by the police, it was easily and immediately retrievable. *James*, 586 S.W.3d at 725. Consequently, his act was mere abandonment and did not rise to the level of unlawful tampering. *Id.* at 730. We disagree.

*James* does not compel the result Lucas seeks. In *James*, the defendant was charged with tampering because he dropped a glass pipe containing methamphetamine while in the presence of police. *Id.* at 720. We held that

6

such conduct could not form the basis of a tampering charge, which by statute requires in relevant part that the defendant conceal or remove the evidence at issue. KRS 524.100(1)(a); *James*, 586 S.W.3d at 729-30. More particularly, we held that "where a defendant merely drops, throws down, or abandons drugs in the vicinity of the defendant and in the presence and view of the police, and the officer can quickly and readily retrieve the evidence, the criminal act of concealment or removal has not taken place." *Id.* at 731.

Notably, however, we also noted in *James* that the inquiry is case-specific, and thus efforts to conceal evidence, even in the presence of police, may form the basis for a tampering conviction:

> We caution, however, that the dropping or tossing away of evidence in the presence of a law enforcement officer, even when the drugs are eventually recovered, is not always outside the reach of the tampering statute. In some scenarios, the affirmative act of dropping or throwing away the evidence even in the presence of law enforcement officers may constitute a violation of the statute, depending on the specific facts of the case. For example, *where the tossing away of evidence makes the evidence "substantially more difficult or impossible" for law enforcement to recover and use in a later proceeding against the defendant, the act may result in concealment, even if the officers ultimately succeed in retrieving the evidence.*

*Id.* at 730 (emphasis added). As we subsequently clarified in *Stieritz v. Commonwealth*, the ultimate inquiry is "whether the defendant intended 'to prevent law enforcement officials from finding the evidence and using it in an official proceeding' and further completed the criminal act by destroying, mutilating, concealing, removing, or altering the physical evidence." 671 S.W.3d 353, 365 (quoting *Commonwealth v. Henderson*, 85 S.W.3d 618, 620 (Ky. 2002)).

7

Such an act of concealment occurred in this case. Surveillance footage showed that the perpetrator of the robbery was wearing a watch at the time of the crime. The law enforcement officer who arrested Lucas recalled that he was wearing a watch when he was handcuffed. Later, during Lucas's interview, Sergeant Kuklinski noticed Lucas was not wearing the watch seen in the surveillance footage from the scene of the crime. A subsequent search of the police cruiser in which Lucas was transported revealed that the watch had been tucked away from view in the backseat.

Construed in the light most favorable to the Commonwealth, this evidence was sufficient to allow a reasonable jury to find that Lucas, outside the view of the officers, tucked the watch into the backseat of the cruiser. In so doing, Lucas hid the watch from view and thus unquestionably made it substantially more difficult for law enforcement officers to recover the watch. Unlike *James*, Lucas points us to no evidence that he threw down or abandoned the watch in the presence of police. As such, it simply cannot be said that Lucas did not "conceal" the evidence at issue. *See* KRS 524.100(1)(a) ("A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he . . . conceals . . . physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding[.]"); *James*, 586 S.W.3d at 730 ("[W]here the tossing away of evidence makes the evidence 'substantially more difficult or impossible' for law enforcement to recover and use in a later proceeding against the defendant, the

8

act may result in concealment, even if the officers ultimately succeed in retrieving the evidence."). Indeed, the instructions allowed for a finding of guilt only if the jury concluded that Lucas concealed or removed the watch, and that he did so with an intent to impair its availability in a proceeding. The jury found that Lucas did so, with that requisite intent. Thus, because the Commonwealth presented evidence of substance that Lucas tucked the watch into the backseat of the cruiser, and thus affirmatively engaged in an act designed to make it more difficult for law enforcement to recover the watch, we find that the trial court's denial of Lucas's motion for a directed verdict was not error, much less palpable error.

## II. The Commonwealth's Statements In Closing Argument Were Fair Comment And Argument On The Evidence.

Lucas also argues that the Commonwealth engaged in flagrant misconduct during its closing argument. By way of background, the prosecution pointed out during trial that when interviewed by police immediately after the crime, Lucas did not attempt to assert his innocence but rather talked in circles and answered questions with questions. In pointing to this as evidence of guilt in closing argument, the prosecutor stated "[w]e all know the verse in Proverbs, right? The wicked flee when no one pursues but the righteous are bold as a lion." Five minutes later, the prosecutor stated Lucas

> is not bold. The wicked are not bold as a lion. What are they?
> The wicked are shameful. They are timid and they are cowardly.
> That's why they flee. Even when they are not pursued, the wicked
> flee. Why? They want to distance themselves from their accuser
> and they want to avoid judgment. They are too shameful to face

9

the truth.  Too timid to confront facts, too cowardly to take the blame for their deeds. . . .

The prosecutor then further stated:

What did he do when he was confronted by his accuser and judgment was near?  He fled.  Maybe not physically.  But you saw him flee verbally and morally all over that interview.  He talks a lot without saying anything because he is trying to distance himself from his accuser and avoid judgment.  He answers a question with a question because he's too shameful to face the truth.  And he talks in circles because he's too timid to face facts.

Lucas contends this commentary was improper because it invoked religious scripture, cast Lucas as wicked, shameful, cowardly, and timid, and denigrated his constitutional right to a trial.  We disagree.

As an initial matter, Lucas concedes that he failed to preserve this claim for appeal and requests palpable error review.  Thus, we review the issue under a palpable error standard, pursuant to RCr 10.26.  *See Brewer v. Commonwealth*, 206 S.W.3d 343, 348-49 (Ky. 2006).  Given that the error is unpreserved, we will reverse only if the prosecutorial misconduct was "flagrant and was such as to render the trial fundamentally unfair."  *Ordway v. Commonwealth*, 391 S.W.3d 762, 789 n.16 (Ky. 2013) (quoting *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010)).  The issues of whether a prosecutor's statements rise to the level of misconduct and render the trial fundamentally unfair are mixed questions of law and fact and are reviewed *de novo*.  *U.S. v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999).

Prosecutorial misconduct is an improper or illegal act by a prosecutor involving an attempt to persuade the jury to wrongly convict or assess an unjustified punishment.  *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329

10

(Ky. 2016). Such misconduct may take the form of improper closing argument. *Id.* In reviewing an unpreserved claim of prosecutorial misconduct, we first consider whether the remarks were improper. If not, the remarks do not warrant reversal and our inquiry is at end. If the remarks were improper, we then consider four factors to determine whether reversible flagrant misconduct occurred: (1) whether the remarks tended to mislead the jury or prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberate or accidental; and (4) the strength of the evidence against the accused. *Id.*

Prosecutors enjoy considerable latitude as to the content of closing arguments. *Barrett v. Commonwealth,* 677 S.W.3d 326, 333 (Ky. 2023). As a result, prosecutors are generally permitted to comment liberally and extensively on the evidence presented. *Maxie v. Commonwealth*, 82 S.W.3d 860, 866 (Ky. 2002). An appellate court's review must center on the essential fairness of the trial as a whole, with reversal being justified only if the prosecutor's misconduct was "so improper, prejudicial, and egregious as to have undermined the overall fairness of the proceedings." *Brewer*, 206 S.W.3d at 349 (citing *Soto v. Commonwealth,* 139 S.W.3d 827, 873 (Ky. 2004)).

We conclude that the Commonwealth's remarks did not rise to the level of flagrant misconduct required for reversal. The prosecutor's implied depictions of Lucas as "wicked," "shameful," "cowardly," and "timid," though certainly strong, were comparable to other equally harsh characterizations tolerated by this Court and its predecessor. *See, e.g., Murphy v.*

11

*Commonwealth*, 509 S.W.3d 34, 53 (Ky. 2017) ("monster"); *Dean v. Commonwealth*, 844 S.W.2d 417, 421 (Ky. 1992) ("crazed animals"); *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987) ("bit of evil"); *Ferguson v. Commonwealth*, 401 S.W.2d 225, 228 (Ky. 1965) ("beast"); *Grigsby v. Commonwealth*, 302 Ky. 266, 194 S.W.2d 363, 364 (1946) ("vile brute"); *Holbrook v. Commonwealth*, 249 Ky. 795, 61 S.W.2d 644, 645 (1933) ("desperado"). Although the prosecutor's statements were fairly extensive in both duration and frequency, their extensiveness was commensurate with the culpability of Lucas's behavior in light of the strong evidence against him. Consequently, the Commonwealth did not exceed the bounds of proper argument by wrongfully condemning or vilifying Lucas. *See Murphy*, 509 S.W.3d at 53. Nor do we perceive in the prosecutor's comments any improper indictment of Lucas's insistence on his constitutional right to a jury trial.

Neither do we find the Commonwealth's quotation of the book of Proverbs to be so egregious as to merit reversal. It is well established that a prosecutor may argue reasonable inferences that may be derived from a particular defendant's behavior, such as flight from the scene of a crime being indicative of guilt, as these are simply appeals to the common sense and collective wisdom of the jury. *Ordway,* 391 S.W.3d at 776. In invoking an evocative image from wisdom literature, the prosecutor made a deliberate attempt not to mislead the jury, but rather to highlight the strength of the evidence incriminating Lucas and to persuade the jury to weigh that evidence accordingly. In doing so, the Commonwealth made fair arguments regarding

12

general principles of the behavior of guilty individuals and the ways in which Lucas's conduct matched those principles. For this reason, reversal here is unwarranted.

We reject Lucas's argument that the Commonwealth invoked holy scripture in order to induce the jury to find Lucas guilty on religious, rather than legal, grounds. It is true that we found error in a prosecutor's questioning of a minister regarding his study of biblical teachings on the death penalty, scriptural references addressing the penalty, and testimony that God would condemn the jury for not imposing the penalty on the defendant. *Ice v. Commonwealth*, 667 S.W.2d 671, 676 (Ky. 1984). We also held it improper for jurors to take Bibles into the jury room with them. *Grooms v. Commonwealth*, 756 S.W.2d 131, 142 (Ky. 1988). Indeed, conduct of this nature would surely mislead the jury and stir up prejudice against the accused. However, Lucas fails to show how an abbreviated reference to the Bible is analogous to either of these cases as an attempt to compel the jury to convict him on religious grounds. Indeed, the Biblical reference at issue is in the nature of a wide-recognized sentiment rather than a religious command.

Within the wide latitude afforded to prosecutors in closing arguments, expression of personal opinions regarding a defendant's guilt that are *based on the evidence* in the case is proper under this Court's precedent. *Dickerson*, 485 S.W.3d at 332. Given the overwhelming proof of Lucas's guilt, the Commonwealth's words, even in conjunction with its invocation of Proverbs, amounted to fair and nonprejudicial comments on the evidence presented.

13

Therefore, we find no reversible misconduct in the Commonwealth's statements during closing argument.

## CONCLUSION

For the foregoing reasons, we affirm the judgment and sentence of the Hardin Circuit Court.

All sitting. VanMeter, C.J.; Bisig, Conley, Lambert, and Nickell, JJ., concur. Keller and Thompson, JJ., concur in result only.


COUNSEL FOR APPELLANT:

Steven J. Buck
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General

14